CAMPBELL & Another v. HOLT.

115 US 620

IN ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

Submitted April 17, 1885.—Decided December 7, 1885.

The repeal of a statute of limitation of actions on personal debts does not, as applied to a debtor, the right of action against whom is already barred, deprive him of his property in violation of the Fourteenth Amendment of the Constitution of the United States.

The facts which make the case are stated in the opinion of the court.

*Mr. W. W. Boyce* for plaintiffs in error.

*Mr. F. Charles Hume* and *Mr. Seth Shepard* for defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Texas.

The action was brought in the District Court of Washington County, Texas, May 16, 1874, by Holt, the defendant in error, against the present plaintiffs in error. Holt sued as devisee and legatee of his wife, Malvina, who was the daughter of John Stamps, deceased, of whose estate Moina and J. B. Campbell are administrators.

The action was founded in the allegation that Malvina Stamps, afterwards Holt, inherited from her mother, Henrietta Stamps, the wife of John Stamps, an interest in lands and negroes which her mother owned at the time of her death; that the land was sold by her father, John Stamps, who received the money and converted it to his own use; and that he also received the hire and profits of the negroes so long as they remained slaves under the laws of Texas.

The defendants set up several defences, among others the statute of limitations of the State of Texas, but, on a trial by

jury, Holt recovered a judgment for $8692.93. From this judgment an appeal was taken to the Supreme Court of the State, and referred, by consent of parties, to the Commissioners of Appeal, by whom it was confirmed, and this affirmance was made the judgment of the Supreme Court.

There were several assignments of error in the hearing before the Commissioners of Appeal, but the only one which we can consider is that growing out of the plea of the statute of limitations.

The cause of action in this case accrued before the outbreak of the war, the mother having died in 1857, and Malvina Stamps was a minor during all the time preceding the insurrection. It seems that the legislature of Texas had passed several acts suspending the operation of the statutes of limitations during the war. But in 1866 a law was passed which enacted that these statutes, which had been suspended during this time, should again commence running on the 2d day of September of that year. At this time Malvina Stamps was of age and unmarried, and the statute then began to run against her in this case, and would become a bar in two years. This time elapsed without any suit brought on the claim. It was, therefore, as the Commissioners of Appeal admit, then barred by the statute. But in 1869 the State of Texas, which had not yet been reinstated and accepted by the two houses of Congress as in her old relations, made a new Constitution which, it was declared in the ordinance submitting it to the vote of the people, should take effect when it was accepted by Congress, which was afterwards done.

Article 12, section 43, of this Constitution is in these words: "The statutes of limitations of civil suits were suspended by the so-called act of secession of the 28th of January, 1861, and shall be considered as suspended within this State, until the acceptance of this Constitution by the United States Congress."

The District Court of Washington County, and the Commissioners of Appeal, following many previous decisions of the Supreme Court of the State, held that this provision removed the bar of the statute of limitations, though before its taking

effect the time had elapsed necessary to make the bar complete in this case.

The defendants, both by plea and by prayers for instruction to the jury, and in argument before the Commissioners of Appeal, insisted that the bar of the statute, being complete and perfect, could not, as a defence, be taken away by this constitutional provision, and that, to do so, would violate that part of the Fourteenth Amendment to the Constitution of the United States which declares that no State shall " deprive any person of life, liberty, or property without due process of law."

This writ of error to the State court is founded on that proposition, and we must inquire into its soundness.

The action is based on contract. It is for hire of the negroes used by the father, and for the money received for the land of his daughter, sold by him. The allegation is of indebtedness on this account, and the plea is that the action is barred by the statute of limitations. It is not a suit to recover possession of real or personal property, but to recover for the violation of an implied contract to pay money. The distinction is clear, and, in the view we take of the case, important.

By the long and undisturbed possession of tangible property, real or personal, one may acquire a title to it, or ownership, superior in law to that of another, who may be able to prove an antecedent and, at one time, paramount title. This superior or antecedent title has been lost by the laches of the person holding it, in failing within a reasonable time to assert it effectively; as, by resuming the possession to which he was entitled, or asserting his right by suit in the proper court. What the primary owner has lost by his laches, the other party has gained by continued possession, without question of his right. This is the foundation of the doctrine of *prescription*, a doctrine which, in the English law, is mainly applied to incorporeal hereditaments, but which, in the Roman law, and the codes founded on it, is applied to property of all kinds.

Mr. Angell, in his work on Limitations of Actions, says that the word limitation is used in reference to " the time which is prescribed by the authority of the law (*auctoritate legis*, 1 Co. Litt. 113) during which a title may be acquired to property by

virtue of a simple adverse possession and enjoyment, or the time at the end of which no action at law or suit in equity can be maintained;" and in the Roman law it is called *Præscriptio.*

" Prescription, therefore (he says), is of two kinds—that is, it is either an instrument for the acquisition of property, or an instrument of an exemption only from the servitude of judicial process." Angell on Limitations, §§ 1, 2.

Possession has always been a means of acquiring title to property. It was the earliest mode recognized by mankind of the *appropriation* of anything tangible by one person to his own use, to the exclusion of others, and legislators and publicists have always acknowledged its efficacy in confirming or creating title.

The English and American statutes of limitation have in many cases the same effect, and, if there is any conflict of decisions on the subject, the weight of authority is in favor of the proposition that, where one has had the peaceable, undisturbed, open possession of real or personal property, with an assertion of his ownership, for the period which, under the law, would bar an action for its recovery by the real owner, the former has acquired a good title—a title superior to that of the latter, whose neglect to avail himself of his legal rights has lost him his title. This doctrine has been repeatedly asserted in this court. *Leffingwell* v. *Warren,* 2 Black, 599; *Croxall* v. *Shererd,* 5 Wall. 268, 289; *Dickerson* v. *Colgrove,* 100 U. S. 578, 583; *Bicknell* v. *Comstock,* 113 U. S. 149, 152. It is the doctrine of the English courts, and has been often asserted in the highest courts of the States of the Union.

It may, therefore, very well be held that, in an action to recover real or personal property, where the question is as to the removal of the bar of the statute of limitations by a legislative act passed after the bar has become perfect, such act deprives the party of his property without due process of law. The reason is, that, by the law in existence before the repealing act, the property had become the defendant's. Both the legal title and the real ownership had become vested in him, and to give the act the effect of transferring this title to plaintiff, would be to deprive him of his property without due process of law.

But we are of opinion that to remove the bar which the statute of limitations enables a debtor to interpose to prevent the payment of his debt stands on very different ground.

A case aptly illustrating this difference in the effect of the statute of limitations is found in *Smart* v. *Baugh*, 3 J. J. Marsh. 364, in which the opinion was delivered by Chief Justice Robertson, whose reputation as a jurist entitles his views to the highest consideration. The action was detinue for a slave, and the defendant having proved his undisturbed possession of the slave for a period of time which would bar the action, but having failed to plead the statute of limitations, the question was whether he could avail himself of the lapse of time. "The plea (said the court) is *non detinet* in the present tense, and under this plea anything which will show a better right in the defendant than in the plaintiff may be admitted as competent evidence. The plea puts in issue the plaintiff's right. Five years uninterrupted adverse possession of a slave not only bars the remedy of the claimant out of possession, but vests the absolute legal right in the possessor. Therefore, proof of such possession may show that the claimant has no right to the slave and cannot recover. Consequently it would seem to result, from the reason of the case, that the adverse possession may be proved under the general issue." Answering the objection that in assumpsit-and other actions the statute to be available must be pleaded, and by analogy should be pleaded in that case, he says : " The same reason does not apply to assumpsit, because the statute of limitations does not destroy the right *in foro conscientiæ* to the benefit of assumpsit, but only bars the remedy if the defendant chooses to rely on the bar. *Time does not pay the debt, but time may vest the right of property.*" Again he says : " This is perfectly true in detinue for a slave, because, in such a case, the lapse of time has divested the plaintiff of his right of property, and vested it in the defendant. . . . But it is not so in debt, because the statute of limitations does not destroy nor pay the debt." " This (he says) has been abundantly established by authority. . . . A debt barred by time is a sufficient consideration for a new assumpsit. The statute of limitations only disqualifies the

plaintiff to recover a debt by suit if the defendant rely on time in his plea. It is a personal privilege, accorded by law for reasons of public expediency; and the privilege can only be asserted by plea."

The distinction between the effect of statutes of limitation in vesting rights to real and personal property, and its operation as a defence to contracts, is well stated in *Jones* v. *Jones*, 18 Ala. 248. See also Langdell's Equity Pleading, §§ 118 *et seq.*

We are aware that there are to be found, in the opinions of courts of the States of the Union, expressions of the idea that the lapse of time required to bar the action extinguishes the right, and that this is the principle on which the statutes of limitation of actions rest.

But it will be found that many of these are in cases where the suits are for the recovery of specific real or personal property, and where the proposition was true, because the right of the plaintiff in the property was extinguished and had become vested in the defendant. In others, the Constitution of the State forbade retrospective legislation. That the proposition is sound, that, in regard to debt or assumpsit on contract, the remedy alone is gone and not the obligation, is obvious from a class of cases which have never been disputed.

1. It is uniformly conceded, that the debt is a sufficient consideration for a new promise to pay, made after the bar has become perfect.

2. It has been held, in all the English courts, that, though the right of action may be barred in the country where the defendant resides or has resided, and where the contract was made, so that the bar in that jurisdiction is complete, it is no defence, if he can be found, to a suit in another country.

In the case of *Williams* v. *Jones*, 13 East, 439, the contract sued on was made in India, and by the law of limitations of that jurisdiction the right of action was barred. But the recovery on it was allowed in England on the ground that the bar did not exist in England, and the right itself had not been lost. Lord Ellenborough said: " Here there is only an extinction of the remedy in the foreign court, according to the

law stated to be received there, but no extinction of the right."
Bayley, Justice, said : "The statute of limitations only bars
the plaintiff's remedy and not the debt, and the extent. of the
defendant's argument is only to show, that the remedy is
barred in India, but that does not show it to be barred
here."

The decisions are numerous to the same effect in the Ameri-
can courts.   In the case of *Le Roy* v. *Crowninshield*, 2 Mason,
151, Judge Story had conceded that the authorities were that
way, but intimated that, if the question were *res nova*, sound ·
principle might require a different decision.   But in the case
of *Townsend* v. *Jemison*, 9 How. 407, Mr. Justice Wayne
says that, in the previous case of *McElmoyle* v. *Cohen*, 13 Pet.
312, in which Judge Story participated, he concurred in the
doctrine that, on principle as well as authority, the. bar of the
statute in one State cannot be. pleaded as a defence in the
courts of another State, though the contract be made in the
former.

In this case of *Townsend* v. *Jemison* the opinion of the court
contains an elaborate examination of the whole question.   It
explains the difference between statutes whose effect is to vest
title to property by adverse possession, and those which merely
affect the remedy, as in case of contract.   The result of it is
summed up in a single sentence : "The rule in the courts of
the United States, in respect to pleas of the statutes of limita-
tion, has always been that they strictly affect the remedy and
not the merits." p. 412.   Again : "The rule is that the
statute of limitations of the country in which the suit is
brought, may be pleaded to bar a recovery upon a contract
made out of its political jurisdiction, and that the limitation of
the *lex loci contractus* cannot be." p. 414.   And it is said that
in the cases decided in England on this subject there has been
no fluctuation.

The case before the court was an action brought in Alabama
against a citizen of Mississippi, on a contract made in the latter
State, and which, by the laws of that State, was barred by
the lapse of time.   In the case of *McElmoyle* v. *Cohen*, the
question was " whether the statute of limitations of the State

of Georgia can be pleaded to an action in that State upon a judgment rendered in the State of South Carolina."

The court, in its opinion, says this "will be determined by settling what is the nature of a plea of the statute of limitations. Is it a plea that settles the right of a party on a contract or judgment, or one that bars the remedy? Whatever diversity of opinion there may be among jurists on this point, we think it well settled to be a plea to the remedy; and, consequently, that the *lex-fori* must prevail." p. 327. So well is this doctrine established, that many States of the Union have made it a part of their statute of limitations, that, when the action is barred by the law of a State in which defendants had resided, it shall also be a bar to an action in those States.

There are numerous cases where a contract incapable of enforcement for want of a remedy, or because there is some obstruction to the remedy, can be so aided by legislation as to become the proper ground of a valid action; as in the case of a physician practising without license, who was forbidden to compel payment for his service by suit. The statute being repealed which made this prohibition, he recovered in the court a judgment for the value of his services on the ground that the first statute only affected the remedy. *Hewitt* v. *Wilcox*, 1 Met. (Mass.) 154. Of like character is the effect of a repeal of the laws against usury, in enabling parties to recover on contracts in which the law forbade such recovery before the repeal. *Wood* v. *Kennedy*, 19 Ind. 68; *Welch* v. *Wadsworth*, 30 Conn. 149; *Butler* v. *Palmer*, 1 Hill, 324; *Hampton* v. *Commonwealth*, 19 Penn. St. 329; *Baugher* v. *Nelson*, 9 Gill, 304.

In all this class of cases the ground taken is, that there exists a contract, but, by reason of no remedy having been provided for its enforcement, or the remedy ordinarily applicable to that class having, for reasons of public policy been forbidden or withheld, the legislature, by providing a remedy where none exists, or removing the statutory obstruction to the use of the remedy, enables the party to enforce the contract, otherwise unobjectionable.

Such is the precise case before us. The implied obligation

of defendant's intestate to pay his child for the use of her property remains. It was a valid contract, implied by the law before the statute began to run in 1866. Its nature and character were not changed by the lapse of two years, though the statute made that a valid defence to a suit on it. But this defence, a purely arbitrary creation of the law, fell with the repeal of the law on which it depended.

It is much insisted that this right to defence is a vested right, and a right of property which is protected by the provisions of the Fourteenth Amendment.

It is to be observed that the word vested right is nowhere used in the Constitution, neither in the original instrument nor in any of the amendments to it.

We understand very well what is meant by a vested right to real estate, to personal property, or to incorporeal hereditaments. But when we get beyond this, although vested rights may exist, they are better described by some more exact term, as the phrase itself is not one found in the language of the Constitution.

We certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case. The statutes of limitation, as often asserted and especially by this court, are founded in public needs and public policy—are arbitrary enactments by the law-making power. *Tioga Railroad* v. *Blossburg and Corning Railroad*, 20 Wall. 137, 150. And other statutes, shortening the period or making it longer, which is necessary to its operation, have always been held to be within the legislative power until the bar is complete. The right does not enter into or become a part of the contract. No man promises to pay money with any view to being released from that obligation by lapse of time. It violates no right of his, therefore, when the legislature says, time shall be no bar, though such was the law when the contract was made. The authorities we have cited, especially in this court, show that no right is destroyed when the law restores a remedy which had been lost.

An instructive case on this subject is that of *Foster et al.* v.

*The Essex Bank*, 16 Mass. 245. The charter of the bank being about to expire in 1819, the legislature of Massachusetts passed a law continuing the existence of all corporations for the space of three years after the expiration of their charters, for the purpose of prosecuting and defending suits, and enabling them to settle and close their concerns and divide their capital stock. To a suit brought against the bank after its charter had expired, but within the three years allowed by this statute, it was insisted that the statute of 1819 was void, as being retrospective in its operation, and interfering with vested rights. The court said: " We cannot discover any principle by which it can be decided that this statute is void. It does not infringe or interfere with any of the privileges secured by the charter. unless it be considered a privilege to be secured from payment of debts or the performance of contracts, and this is a kind of privilege which, we imagine, the Constitution was not intended to protect;   .  .  .   and a legislature which, in its acts not expressly authorized by the Constitution, limits itself to correcting mistakes, and providing remedies for the furtherance of justice, cannot be charged with violating its duty or exceeding its authority."

We are unable to see how a man can be said to have *property* in the bar of the statute as a defence to his promise to pay. In the most liberal extension of the use of the word property, to choses in action, to incorporeal rights, it is new to call the defence of lapse of time to the obligation to pay money, property. It is no natural right. It is the creation of conventional law.

We can understand a right to enforce the payment of a lawful debt. The Constitution says that no State shall pass any law impairing this obligation. But we do not understand the right to satisfy that obligation by a protracted failure to pay. We can see no right which the promisor has in the law which permits him to plead lapse of time instead of payment, which shall prevent the legislature from repealing that law, because its effect is to make him fulfil his honest obligations.

In the Supreme Court of the State of Texas this question came up, within two years after the adoption of the new Con-

stitution, in the case of *Bender* v. *Crawford*, 33 Texas, 745, and the constitutional provision repealing all statutes of limitation formerly in existence was held valid. The case was well considered, and has been adhered to ever since.

Among the cases on the subject referred to in the opinion of the Commissioners of Appeal in the present case, are *Rivers* v. *Washington*, 34 Texas, 267; *Dwight* v. *Overton*, 35 Texas, 390; *Moseley* v. *Lee*, 37 Texas, 479; *Bentinck* v. *Franklin*, 38 Texas, 458; *Wood* v. *Welder*, 42 Texas, 396; and *Lewis* v. *Davidson*, 51 Texas, 251.

The judgment of the Supreme Court of Texas is

*Affirmed.*

MR. JUSTICE BRADLEY, with whom concurred MR. JUSTICE HARLAN, dissenting.

I feel obliged to dissent from the opinion of the court in this case. I think that when the statute of limitations gives a man a defence to an action, and that defence has absolutely accrued, he has a right which is protected by the Fourteenth Amendment of the Constitution from legislative aggression. That clause of the amendment which declares that "no State shall deprive any person of life, liberty, or property without due process of law," was intended to protect every valuable right which a man has. The words life, liberty, and property are constitutional terms, and are to be taken in their broadest sense. They indicate the three great subdivisions of all civil right. The term "property," in this clause, embraces all valuable interests which a man may possess outside of himself, that is to say, outside of his life and liberty. It is not confined to mere tangible property, but extends to every species of vested right. In my judgment, it would be a very narrow and technical construction to hold otherwise. In an advanced civilization like ours, a very large proportion of the property of individuals is not visible and tangible, but consists in rights and claims against others, or against the government itself.

Now, an exemption from a demand, or an immunity from prosecution in a suit, is as valuable to the one party as the right to the demand or to prosecute the suit is to the other.

The two things are correlative, and to say that the one is protected by constitutional guaranties and that the other is not, seems to me almost an absurdity. One right is as valuable as the other. My property is as much imperiled by an action against me for money, as it is by an action against me for my land or my goods. It may involve and sweep away all that I have in the world. Is not a right of defence to such an action of the greatest value to me? If it is not property in the sense of the Constitution, then we need another amendment to that instrument. But it seems to me that there can hardly be a doubt that it is property.

The immunity from suit which arises by operation of the statute of limitations is as valuable a right as the right to bring the suit itself. It is a right founded upon a wise and just policy. Statutes of limitation are not only calculated for the repose and peace of society, but to provide against the evils that arise from loss of evidence and the failing memory of witnesses. It is true that a man may plead the statute when he justly owes the debt for which he is sued; and this has led the courts to adopt strict rules of pleading and proof to be observed when the defence of the statute is interposed. But it is, nevertheless, a right given by a just and politic law, and, when vested, is as much to be protected as any other right that a man has.

The fact that this defence pertains to the remedy does not alter the case. Remedies are the life of rights, and are equally protected by the Constitution. Deprivation of a remedy is equivalent to a deprivation of the right which it is intended to vindicate, unless another remedy exists or is substituted for that which is taken away. This court has frequently held that to deprive a man of a remedy for enforcing a contract is itself a mode of impairing the validity of the contract. And, as before said, the right of defence is just as valuable as the right of action. It is the defendant's remedy. There is really no difference between the one right and the other in this respect.

It is said that the statutory defence acquired and perfected in one State or country is not, or may not be, a good defence in another. This, if it were true, proves nothing to the pur-

pose. It is a vested right in the place where it has accrued, and is an absolute bar to the action there. This is a valuable right, although it may be ineffective elsewhere.

Again, it is said that a debt barred by the statute is a good consideration for a promise to pay it; which shows that the statute does not extinguish the debt. This is no answer to the position that the statutory defence is a valuable and an absolute right. A new promise is an implied admission that the debt has not been paid, and amounts to a voluntary waiver of the statute.

I am unable to yield assent to any of the specious arguments advanced to show that the defence of the statute, when it has once vested, is an imperfect right which the legislature may, at its mere will, abrogate and take away. I think it is then a vested right, and that vested rights are a species of property which the Fourteenth Amendment of the Constitution was intended to protect from adverse State legislation. The suggestion that the words "vested rights" are not to be found in the Constitution does not prove that there are no such rights. The name of the Supreme Being does not occur in the Constitution; yet our national being is founded on a tacit recognition of His justice and goodness, and the eternal obligation of His laws.

A few of the authorities sustaining the views which I entertain on this subject will be referred to.

On the purpose and object of statutes of limitation, Chief Justice Marshall, in *Clementson* v. *Williams*, 8 Cranch, 72, 74, says : "The statute of limitations was not enacted to protect persons from claims fictitious in their origin, but from ancient claims, whether well or ill founded, which may have been discharged, but the evidence of which may be lost."

In the following cases the general principle is laid down, that, if the time limited by statute for commencing a suit expires whilst the statute is in force, and before the suit is brought, the right to bring the suit is barred, and no subsequent statute can renew the right: *McKinney* v. *Springer*, 8 Blackford, 506 ; *Piatt* v. *Vattier*, 1 McLean, 146 ; *Stipp* v. *Brown*, 2 Ind. 647 ; *Davis* v. *Minor*, 1 How. (Mississippi) 183 ; *Bradford* v. *Brooks*, 2 Aiken (Vt.) 284; *Baldro* v. *Tolmie*, 1

Oregon, 176; *Girdner* v. *Stephens*, 1 Heiskell, 280; *Bigelow* v. *Bemis*, 2 Allen, 496; *Ryder* v. *Wilson*, 12 Vroom (41 N. J. L.) 9, 11. See also *Prentice* v. *Dehon*, 10 Allen, 353, and *Ball* v. *Wyeth*, 99 Mass. 338.

In *Bigelow* v. *Bemis*, which was an action on contract, the Supreme Judicial Court of Massachusetts, speaking by Ch. J. Bigelow, says: "It is well settled that it is competent for the legislature to change statutes prescribing a limitation to actions, and that the one in force at the time of suit brought is applicable to the cause of action. The only restriction on the exercise of this power is, that the legislature cannot remove a bar or limitation which has already become complete, and that no new limitation shall be made to affect existing claims without allowing a reasonable time for parties to bring actions before their claims are absolutely barred by a new enactment." In *Ryder* v. *Wilson's Executors*, which was a suit on promissory notes, the Supreme Court of New Jersey, speaking by Ch. J. Beasley, says: "The decisions of the courts, so far as my research has extended, are wholly in accord on this subject, and, with one voice, they declare that, when a right of action has become barred under existing laws, the right to rely upon the statutory defence is a vested right that cannot be rescinded or disturbed by subsequent legislation." In *Davis* v. *Minor*, which was an action on contract, Chief Justice Sharkey says: "A bar created by the statute of limitations is as effectual as payment; and a defendant cannot be deprived of the benefit of such payment, nor of the evidence to support it; and, having provided himself with evidence sufficient and legal at the time of payment, no law can change the nature, or destroy the sufficiency, of the evidence." Judge Cooley, discussing this subject, says: "Regarding the circumstances under which a man may be said to have a vested right to a defence against a demand made by another, it is somewhat difficult to lay down a comprehensive rule which the authorities will justify. It is certain that he who has satisfied a demand cannot have it revived against him, and he who has become released from a demand by the operation of the statute of limitations is equally protected. In both cases the demand

is gone, and to restore it would be create a new contract for the parties—a thing quite beyond the power of the legislature." Cooley's Const. Lim., 3d Ed. [429]* 369. In my opinion the judgment of the Supreme Court of Texas should be reversed.

I am authorized to say that Mr. Justice Harlan concurs in this opinion.