CHASE SECURITIES CORP., NOW KNOWN AS AMEREX HOLDING CORP., *v.* DONALDSON ET AL., EXECUTORS.

No. 110. Argued February 27, 1945.—Decided May 21, 1945.

---

*Mr. Henry Root Stern,* with whom *Messrs. Frederick H. Stinchfield, Jr., John M. Palmer* and *Floyd E. Nelson* were on the brief, for appellant.

*Mr. Benedict S. Deinard,* with whom *Mr. Hyman Edelman* was on the brief, for appellees.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This appeal from a judgment of the Supreme Court of Minnesota attacks as violative of the Fourteenth Amendment a provision of the Minnesota statutes enacted as part of a general revision of the Minnesota Securities or Blue Sky Law. Its effect upon appellant was to lift the bar of the statute of limitations in a pending litigation, which appellant contends amounts to taking its property without due process of law.

This action was brought in state court in November, 1937, to recover the purchase price of "Chase units," sold by appellant in Minnesota to the appellees' testate August

10, 1929. The "units" had not been registered as required by the laws of that state. The action was based in part on illegality of the sale, but it also was grounded on common-law fraud and deceit. Defendant relied among other defenses on the statute of limitations. Plaintiff countered that the running of the statute had been suspended because defendant had withdrawn from the state and the statute did not run during its absence. The case was tried by the court without a jury. It found that there was a sale in violation of the Blue Sky Law, that the Minnesota 6-year statute of limitations applying to actions "upon a liability created by statute" governed the case but had been tolled by withdrawal of the appellant from the state in 1931. Judgment was therefore rendered for the purchase price adjusted for interest and dividends and the court found it unnecessary to pass on the fraud issues.

The Supreme Court of Minnesota reversed.[1] It held by reference to a companion case [2] that the statute of limitations had not been tolled by the appellant's absence from the state because it had designated agents to receive service of process after its departure as required by statute. The case was remanded on January 10, 1941 without prejudice to further proceedings on "issues other than that of the tolling of the statute of limitations."

While proceedings were pending in the lower court, the legislature enacted a statute, effective July 1, 1941, which amended the Blue Sky Law in many particulars not pertinent here. The section in question added a specific statute of limitations applicable to actions based on violations of the Blue Sky Law [3] as to which there had been no provi-

---

[1] *Donaldson* v. *Chase Securities Corp.*, 209 Minn. 165, 296 N. W. 518.

[2] *Pomeroy* v. *National City Co.*, 209 Minn. 155, 296 N. W. 513.

[3] The section reads:

"Other actions or prosecutions not limited.—No action shall be maintained for relief upon a sale of securities made in violation of

sion except a general statute of limitations. Under the former law the limitation on actions for fraud did not commence to run until its discovery. Under the new law, actions for failure to disclose non-registration or for misrepresentations concerning registration, or for falsity of representations implied from the fact of sale, all of which grounds were set up in this action, must be brought within six years of delivery of the securities. Aggrieved pur-

any of the provisions of this act, or upon a sale of securities made in violation of any of the provisions of a registration thereof under this act, or for failure to disclose that the sale thereof was made in violation of any of the provisions of this act or in violation of any of the provisions of a registration thereof under this act, or upon any representation with respect to the registration or nonregistration of the security claimed to be implied from any such sale, unless commenced within six years after the date on which said securities were delivered to the purchaser pursuant to such sale, provided that if, prior to the effective date of this section, more than five years shall have elapsed from the date of such delivery, then such action may be brought within a period of one year following such effective date, and provided further that no purchaser of a security otherwise entitled thereto shall bring any action for relief of the character above set forth who shall have refused or failed, within 30 days after the receipt thereof by such purchaser, to accept a written offer from the seller or from any person who participated in such sale to take back the securities in question and to refund the full amount paid therefor by such purchaser, together with interest on such amount from the date of payment to the date of repayment, such interest to be computed at the same rate as the fixed interest or dividend rate, if any, provided for in such securities, or, if no rate is so provided, at the rate of six per centum per annum, less in every case the amount of any income received by the purchaser on such securities. Any written offer so made to a purchaser of a security shall be of no force or effect unless a duplicate thereof shall be filed with the commissioner of securities prior to the delivery thereof to such purchaser.

"Nothing in this section, except as herein expressly set forth, shall limit any other right of any person to bring any action in any court for any act involved in or right arising out of a sale of securities or the right of the state to punish any person for any violation of law." Mason's Minn. Stat. 1941 Supp., § 3996–24.

chasers were therefore denied future benefit of suspension of the period of limitation during the time such frauds or grounds of action remained undiscovered. But it also was provided that where delivery had occurred more than five years prior to the effective date of the Act, which was the fact in this case, the action might be brought within one year after the law's enactment. The effect of this was to abolish any defense that appellant might otherwise have made under the Minnesota statutes of limitation.

Both appellant and appellee moved in the trial court, shortly after the Act became effective, for supplemental findings. Appellant asked findings in its favor on the theory that the action was barred, that the new Act was inapplicable, and that there was no proof of actual fraud. Appellee contended that the 1941 law applied and that by reason of it recovery was not barred. The trial court determined that the plaintiff was entitled to recover in tort both on the ground of an illegal sale and on the ground of common-law fraud and deceit; that plaintiff had not discovered the deception until shortly before the action was begun; that the provisions of the 1941 Act applied to the plaintiff's "cause of action, or any of the separate grounds of relief asserted by plaintiff," and operated to extend the time for the commencement of action thereon to July 1, 1942 and that plaintiff's action was therefore commenced within the time limited by the statutes of Minnesota. The appellant moved for amended findings and then for the first time raised the federal constitutional question that the statute, if applied so to lift the bar, deprived appellant of property without due process of law, in violation of the Fourteenth Amendment. Its motion was denied.

Appealing again to the Supreme Court of Minnesota, appellant among other things urged this federal constitutional question. The Supreme Court again did not reach decision of the fraud aspects of the case. It held that the

Blue Sky Law required the securities to be registered and was violated by the sale; that the action was one in tort to recover as damages the purchase price of unregistered securities sold in Minnesota; that the new limitations statute was applicable and had the effect of lifting any pre-existing bar of the general limitation statute and that in so doing it did not violate the due process clause of the Fourteenth Amendment. The court relied on *Campbell* v. *Holt,* 115 U. S. 620, saying, "We do not find that *Campbell* v. *Holt* has been reversed or reconsidered, and we regard it as sound law; and, certainly, so far as the federal constitution is concerned, it is binding on this court until reversed by the Supreme Court."[4] The judgment was therefore affirmed, rehearing was sought and denied,[5] and the case brought here by appeal.

---

[4] *Donaldson* v. *Chase Securities Corp.,* 216 Minn. 269, 276, 13 N. W. 2d 1.

[5] The petition for rehearing for the first time raised two questions also urged here, but which may be disposed of shortly.

1. That the Act in question violated the Fourteenth Amendment in denying equal protection of the law. Even if seasonably made, which is doubtful (see *American Surety Co.* v. *Baldwin,* 287 U. S. 156), the claim is without merit. The statute on its face is a general one, applying to all similarly situated persons or transactions. It appears that a number of cases were involved. Among other litigations were *Stern* v. *National City Co.* (D. C. Minn.), 25 F. Supp. 948, aff'd, *sub nom. City Co. of New York* v. *Stern* (C. C. A. 8th), 110 F. 2d 601, rev'd, 312 U. S. 666; *Chase Securities Corp.* v. *Vogel* (C. C. A. 8th), 110 F. 2d 607, rev'd, 312 U. S. 666. These were remanded by this Court to the Circuit Court of Appeals "for further proceedings with respect to any questions not determined by the Supreme Court of Minnesota" in the *Pomeroy* and *Donaldson* cases. Also in this class of cases was *Shepard* v. *City Co. of New York* (D. C. Minn.), 24 F. Supp. 682. That the motivation for the Act may have arisen in a few cases or in a single case would not establish that a general act such as we have described would deny equal protection.

2. The claim that appellant was denied due process of law because it had no opportunity to submit testimony of legislators as to legislative intent appears to us frivolous. The state court has seen fit to

310

As the case stood in the state courts it is not one where a defendant's statutory immunity from suit had been fully adjudged so that legislative action deprived it of a final judgment in its favor. The lower court had decided against appellant. The Supreme Court had confined its reversal to one question—whether the defendant's withdrawal from the state tolled the running of the statute of limitations. The case was returned to the lower court without prejudice to any other question.

Appellant, however, insists that it was sued upon two separate and independent causes of action, one being "upon a liability created by statute," and that its immunity from suit on that cause of action had been finally adjudicated. The argument is not consistent with the holdings of the state court. The Blue Sky Law imposes duties upon a seller of certain securities, but it does not expressly define a liability for their omission or create a cause of action in favor of a buyer of unregistered securities. The state courts, nevertheless, held that such an illegal sale will support a common-law action in tort. *Drees* v. *Minnesota Petroleum Co.,* 189 Minn. 608, 250 N. W. 563. And on the second appeal of this case the court said, "The action was brought in tort to recover as damages the purchase price of unregistered securities . . . It also sought recovery on the ground of deceit based on misrepresentation, but, in view of our disposition of the case, we need not con-

---

draw inferences as to the intent of an act from its timing and from its provisions and from background facts of public notoriety. But that does not mean that the judgment must be set aside to afford a party the opportunity to call legislators to prove that the court's inferences as to intent were wrong. Statutes ordinarily bespeak their own intention, and when their meaning is obscure or dubious a state court may determine for itself what sources of extrastatutory enlightenment it will consult. Our custom of going back of an act to explore legislative history does not obligate state courts to do so, and there is nothing in the Constitution which by the widest stretch of the imagination could be held to require taking testimony from a few or a majority of the legislators to prove legislative "intent."

sider that phase of the case." [6]   It is not uncommon that a single cause of action in tort will rest both on omission of a statutory duty and on common-law negligence; the two bases do not necessarily multiply the causes of action.   Cf. *Baltimore Steamship Co.* v. *Phillips*, 274 U. S. 316, 321; *New York Central R. Co.* v. *Kinney*, 260 U. S. 340, 346; *Seaboard Air Line R. Co.* v. *Koennecke*, 239 U. S. 352, 354.   This appears to be permitted by the law of Minnesota.   *Tuder* v. *Oregon Short Line R. Co.*, 131 Minn. 317, 318–19, 155 N. W. 200.   It is true that the Supreme Court in disposing of the first appeal relied on a companion case in which it was said that "plaintiff must be considered to have sued 'upon a liability created by statute.' " [7]   The pleadings in the companion case are not before us.   No separate statement of a statutory cause of action is set out in the complaint in this case.   The state court did not dispose of the liability for statutory violation as a separate cause of action by dismissal or otherwise.   We cannot say that it was finally or separately adjudicated.   The state courts seem to have treated the complaint as setting up several bases for a single common-law cause of action in tort which had been remanded for retrial at the time the new statute was enacted.   We must regard it in that same light.

The substantial federal questions which survive the state court decision are whether this case is governed by *Campbell* v. *Holt* and, if so, whether that case should be reconsidered and overruled.

In *Campbell* v. *Holt, supra*, this Court held that where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defend-

---

[6] *Donaldson* v. *Chase Securities Corp.*, 216 Minn. 269, 270–71.

[7] *Pomeroy* v. *National City Co.*, 209 Minn. 155, 156, 296 N. W. 513.

ant of the statutory bar. This has long stood as a statement of the law of the Fourteenth Amendment, and we agree with the court below that its holding is applicable here and fatal to the contentions of appellant.[8]

Appellant asks that in case we find *Campbell* v. *Holt* controlling it be reconsidered and overruled. We are reminded that some state courts have not followed it in construing provisions of their constitutions similar to the due process clause.[9] Many have, as they are privileged to do, so interpreted their own easily amendable constitutions

---

[8] Appellant invokes the principle of our decisions in *William Danzer & Co.* v. *Gulf & Ship Island R. Co.*, 268 U. S. 633, and *Davis* v. *Mills*, 194 U. S. 451. But the state court so construed the relationship between its limitation acts and the state law creating the asserted liability as to make these cases inapplicable, and we do not think it did so improperly. In the *Danzer* case it was held that where a statute in creating a liability also put a period to its existence, a retroactive extension of the period after its expiration amounted to a taking of property without due process of law. Read with the *Danzer* case, *Davis* v. *Mills* stands for the proposition that the result may be the same if the period of limitation is prescribed by a different statute if it "was directed to the newly created liability so specifically as to warrant saying that it qualified the right." 194 U. S. 454. But the situation here plainly does not parallel that in the *Danzer* case, and the state court whose province it is to construe state legislation has found no parallel to the *Davis* case. At the time this action was commenced the Blue Sky Law of Minnesota had imposed on appellant a duty; it had not explicitly created a liability. The liability was implied by the state's common law; the period of limitation was found only in the general statute of limitations enacted many years earlier. The state court concluded that the challenged statute did not confer on appellees a new right or subject appellant to a new liability. It considered that the effect of the legislation was merely to reinstate a lapsed remedy, that appellant had acquired no vested right to immunity from a remedy for its wrong in selling unregistered securities, and that reinstatement of the remedy by the state legislature did not infringe any federal right under the Fourteenth Amendment, as expounded by this Court in *Campbell* v. *Holt*.

[9] *Wasson* v. *State*, 187 Ark. 537, 60 S. W. 2d 1020; *Bussey* v. *Bishop*, 169 Ga. 251, 150 S. E. 78; *Board of Education* v. *Blodgett*, 155 Ill.

to give restrictive clauses a more rigid interpretation than we properly could impose upon them from without by construction of the federal instrument which is amendable only with great difficulty and with the cooperation of many States.

We are also cited to some criticisms of *Campbell* v. *Holt* in legal literature.[10] But neither in volume nor in weight are they more impressive than has been directed at many decisions that deal with controversial and recurrent issues.

Statutes of limitations always have vexed the philosophical mind for it is difficult to fit them into a completely logical and symmetrical system of law. There has been controversy as to their effect. Some are of opinion that like the analogous civil law doctrine of prescription [11] limitations statutes should be viewed as extinguishing the claim and destroying the right itself. Admittedly it is troublesome to sustain as a "right" a claim that can find no remedy for its invasion. On the other hand, some common-law courts have regarded true statutes of limitation as doing no more than to cut off resort to the courts for enforcement of a claim.[12] We do not need to settle these arguments.

441, 40 N. E. 1025; *Jackson* v. *Evans*, 284 Ky. 748, 145 S. W. 2d 1061; *Wilkes County* v. *Forester*, 204 N. C. 163, 167 S. E. 691; *Raymer* v. *Comley Lumber Co.*, 169 Okla. 576, 38 P. 2d 8; *Cathey* v. *Weaver*, 111 Tex. 515, 242 S. W. 447; *Re Swan's Estate*, 95 Utah 408, 79 P. 2d 999; *Eingartner* v. *Illinois Steel Co.*, 103 Wis. 373, 79 N. W. 433.

[10] Appellant cites 2 Lewis' Sutherland, Statutory Construction (2d ed. 1904) § 708, p. 1288; 1 Wood, Limitations (4th ed. 1916) § 11, pp. 47–49; 24 Col. Law Rev. 803 (1924); 10 Corn. L. Q. 212 (1925); 2 Geo. Wash. Law Rev. 100 (1933); Rottschaefer, Constitutional Law (1939) § 252, pp. 548–9.

[11] See La. Civ. Code, Arts. 3457–3459; *Billings* v. *Hall*, 7 Cal. 1, 4; *Goddard's Heirs* v. *Urquhart*, 6 La. 659, 673.

[12] See *Gilbert* v. *Selleck*, 93 Conn. 412, 106 A. 439; *In re Estate of Daniel*, 208 Minn. 420, 294 N. W. 465; *Bates* v. *Cullum*, 177 Pa. 633, 35 A. 861.

Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of Railroad Telegraphers* v. *Railway Express Agency,* 321 U. S. 342, 349. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation.[13] They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

This Court, in *Campbell* v. *Holt,* adopted as a working hypothesis, as a matter of constitutional law, the view that statutes of limitation go to matters of remedy, not to destruction of fundamental rights. The abstract logic of the distinction between substantive rights and remedial or procedural rights may not be clear-cut, but it has been found a workable concept to point up the real and valid difference between rules in which stability is of prime importance and those in which flexibility is a more important value. The contrast between the acceptable result of the reasoning of *Campbell* v. *Holt* and its rather unsatisfactory rationalization was well pointed out by Mr. Justice Holmes when as Chief Justice of Massachusetts he wrote:

[13] For history of these acts see Atkinson, "Some Procedural Aspects of the Statute of Limitations," 27 Col. Law Rev. 157 (1927).

"Nevertheless in this case, as in others, the prevailing judgment of the profession has revolted at the attempt to place immunities which exist only by reason of some slight technical defect on absolutely the same footing as those which stand on fundamental grounds. Perhaps the reasoning of the cases has not always been as sound as the instinct which directed the decisions. It may be that sometimes it would have been as well not to attempt to make out that the judgment of the court was consistent with constitutional rules, if such rules were to be taken to have the exactness of mathematics. It may be that it would have been better to say definitely that constitutional rules, like those of the common law, end in a penumbra where the Legislature has a certain freedom in fixing the line, as has been recognized with regard to the police power. *Camfield* v. *United States*, 167 U. S. 518, 523, 524. But however that may be, multitudes of cases have recognized the power of the Legislature to call a liability into being where there was none before, if the circumstances were such as to appeal with some strength to the prevailing views of justice, and if the obstacle in the way of the creation seemed small." *Danforth* v. *Groton Water Co.*, 178 Mass. 472, 476, 59 N. E. 1033. This statement was approved and followed by the New York Court of Appeals in *Robinson* v. *Robins Dry Dock Co.*, 238 N. Y. 271, 144 N. E. 579.

The essential holding in *Campbell* v. *Holt*, so far as it applies to this case, is sound and should not be overruled. The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life, liberty or property without due process of law. Some rules of law probably could not be changed retroactively without hardship and oppression, and this whether wise or unwise in their origin. Assuming that statutes of limitation, like other types of legislation, could be so manipulated that

their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment. Nor has the appellant pointed out special hardships or oppressive effects which result from lifting the bar in this class of cases with retrospective force. This is not a case where appellant's conduct would have been different if the present rule had been known and the change foreseen. It does not say, and could hardly say, that it sold unregistered stock depending on a statute of limitation for shelter from liability. The nature of the defenses shows that no course of action was undertaken by appellant on the assumption that the old rule would be continued. When the action was commenced, it no doubt expected to be able to defend by invoking Minnesota public policy that lapse of time had closed the courts to the case, and its legitimate hopes have been disappointed. But the existence of the policy at the time the action was commenced did not, under the circumstances, give the appellant a constitutional right against change of policy before final adjudication. Whatever grievance appellant may have at the change of policy to its disadvantage, it had acquired no immunity from this suit that has become a federal constitutional right. The judgment is

*Affirmed.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.