# Constitutionality of State Procedural Reform Provision in Superfund Legislation

A bill reauthorizing the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 contains a section that provides for a uniform federal commencement date for the running of state statutes of limitations in toxic tort actions. By operation of this provision, some actions previously time-barred under existing state law would be revived.

Under current case law, the bill would not be struck down as beyond the constitutional power of Congress. Although the effort to dictate the content of state law is inconsistent with well-established provisions of federalism, it cannot be said that this effort violates the Tenth Amendment as explained by the Supreme Court in *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985).

The retroactive aspects of the bill may be challenged as a denial of property without due process of law or as a taking of property without just compensation. A due process challenge would present difficult questions due to the existence of two lines of Supreme Court authority in apparent tension, and the bill may well be held to violate the Due Process Clause. The revival of a time-barred action probably would not constitute a taking under the ad hoc regulatory takings inquiry established by the Supreme Court.

April 1, 1986

MEMORANDUM OPINION FOR THE DEPUTY ASSISTANT ATTORNEY GENERAL, CIVIL DIVISION

In a letter of December 19, 1985, you requested the views of this Office on the constitutionality of certain provisions in H.R. 2817, prescribing a uniform, retroactive federal commencement date for the running of statutes of limitations in state tort actions arising from exposure to toxic substances (toxic torts). Although the invasion of the powers of the states proposed by this bill raises serious concerns, we cannot say that the bill would be struck down as beyond the constitutional powers of Congress. We believe, however, that the retroactive aspects of the bill may be held to violate the Due Process Clause in certain instances, although they would likely survive a challenge under the Takings Clause. Finally, we think that, even if constitutional, the bill might have the untoward result of inducing some state courts to invalidate entire state causes of action for toxic torts.

H.R. 2817, the House bill reauthorizing the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Pub. L. No. 96–510, 94 Stat. 2767 (codified at scattered sections of titles 26, 33, 42 & 49 of the United States Code) (Superfund), contains a section on "State Procedural Reform,"

32

which provides a uniform federal commencement date for the running of state statutes of limitations in toxic tort actions. The federal commencement date applies to "any action brought under State law" for injury resulting from exposure to toxic substances; this federal commencement date presumably applies to both statutory and common law actions. No new federal cause of action is created. The bill would make the new commencement date applicable to actions brought after December 11, 1980, thereby retroactively "reviving" at least some actions that are time-barred under existing state statutes of limitations.

1. *Tenth Amendment.* The initial question is whether congressional alteration of state statutes of limitations, other than through creation of a preemptive federal cause of action, is consistent with the constitutional structure of dual sovereignty. We find the question troubling. Although Congress may of course preempt state law in areas of legitimate federal constitutional authority, any effort by the federal government to dictate the content of state law (as this bill contemplates) would do gross violence to our federal system. Nevertheless, we cannot say that this novel provision would be held to violate the Tenth Amendment under the standards for constitutional federalism set forth in *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985). The Supreme Court in *Garcia* overruled its earlier decision in *National League of Cities* v. *Usery*, 426 U.S. 833 (1976), which had determined that the federal government's Commerce Clause powers were constrained by the Tenth Amendment "in areas of traditional governmental functions." *Id.* at 852. *Garcia* rejected the distinction between traditional and nontraditional governmental functions as untenable, *see* 469 U.S. at 539–49, and concluded that limitations on congressional power to regulate the states were to be left primarily to the political process. *See id.* at 549–55. To be sure, the Court held open the possibility that certain extreme cases might invite judicial scrutiny. *See id.* at 556–57. But H.R. 2817 would have presented a difficult question even under pre-*Garcia* law. *See FERC* v. *Mississippi*, 456 U.S. 742, 764–71 (1982).

2. *Retroactivity and Due Process.* The proposal to apply the new statute of limitations *retroactively* to revive previously barred actions raises serious constitutional questions, the chief of which is whether revival of time-barred actions is an unconstitutional deprivation of the property of defendants without due process of law.

The principal decision suggesting that revival of actions might violate the Constitution is *William Danzer & Co.* v. *Gulf & Ship Island R.R. Co.*, 268 U.S. 633 (1925). Following the First World War, a statute was passed providing that the period of wartime federal control of railroads was not to be counted in determining whether actions under the Interstate Commerce Act were brought within that Act's statute of limitations. The reparations suit by the plaintiff shippers in *Danzer* was brought subsequent to this new statute, but the time limit on the action under the old statute of limitations had expired *before* the post war enactment. If the wartime period was excluded from the computation, the action would have been timely. The Supreme Court held that it would

33

violate the Fifth Amendment to apply the new limitations provision to revive an action that was already fully barred. Prior decisions had established "that the lapse of time not only barred the remedy but also *destroyed the liability* of defendant to plaintiff. On the expiration of the two-year [limitations] period, it was as if liability had never existed." 268 U.S. at 636 (emphasis added) (citations omitted). In such cases, where the limitations provision "constitute[s] a part of the definition of a cause of action created by the same or another provision, and operate[s] as a limitation on liability," *id.* at 637, retroactive application of a change in the statute to revive liability "would . . . deprive defendant of its property without due process of law in contravention of the Fifth Amendment." *Id.*

*Danzer* distinguished the Court's earlier opinion in *Campbell* v. *Holt*, 115 U.S. 620 (1885), which had rejected the argument that the retroactive removal of a time-bar to a Texas contract action violated the Fourteenth Amendment. The *Campbell* Court, while suggesting that there would be constitutional problems with revival of an action to recover title to property that had vested with the passage of time, *see* 115 U.S. at 623, found no such bar to revival of an expired contract action, holding: "We certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case." *Id.* at 628. *See also id.* at 629 ("[w]e are unable to see how a man can be said to have *property* in the bar of the statute as a defence to his promise to pay") (emphasis in original). The *Danzer* Court found this case inapplicable since it "rests on the conception that the obligation of the debtor to pay was not destroyed by lapse of time, and that the statute of limitations related to the remedy only . . . ." 268 U.S. at 637. By contrast, the *Danzer* Court concluded, the time limitation in the Interstate Commerce Act went to the existence of *liability*, freedom from which was held to be a vested property right that could not be infringed under the Fifth Amendment. *See id.*

In *Chase Securities Corp.* v. *Donaldson*, 325 U.S. 304 (1945), the Court upheld the constitutionality of retroactive application of a change in the statute of limitations for actions under Minnesota's Blue Sky laws. *Danzer* was discussed and distinguished in a footnote:

> In the *Danzer* case it was held that where a statute in creating a liability also put a period to its existence, a retroactive extension of the period after its expiration amounted to a taking of property without due process of law . . . . But the situation here plainly does not parallel that in the *Danzer* case . . . . At the time this action was commenced the Blue Sky Law of Minnesota had imposed on appellant a duty; it had not explicitly created a liability. The liability was implied by the state's common law; the period of limitation was found only in the general statute of limitations enacted many years earlier. The state court concluded that the challenged statute did not confer on appellees a

34

> new right or subject appellant to a new liability. It considered
> that the effect of the legislation was merely to reinstate a lapsed
> remedy, that appellant had acquired no vested right to immunity
> from a remedy for its wrong in selling unregistered securities,
> and that reinstatement of the remedy by the state legislature did
> not infringe any federal right under the Fourteenth Amendment,
> as expounded by this Court in *Campbell* v. *Holt*.

*Id.* at 312 n.8. Thus, the footnote in *Chase Securities* appears to retain the "right/remedy" distinction enunciated by *Danzer*: retroactive application of new statutes of limitations is unconstitutional when it would revive liability, rather than merely revive a remedy for liability that was never extinguished, and in state causes of action one must look to state law to determine which is the case.[1]

The Court's most recent discussion of *Danzer* is consistent with this analysis. In *International Union of Electrical, Radio & Machine Workers, AFL-CIO, Local 790* v. *Robbins & Myers, Inc.*, 429 U.S. 229 (1976), the Court upheld the retroactive application of a new statute of limitations for filing charges with the Equal Employment Opportunity Commission (EEOC), thus preserving a suit under Title VII of the Civil Rights Act of 1964 that would otherwise have been barred for failure to file with the EEOC in timely fashion. After concluding that the new limitations period applied to the suit in question, the Court rejected the defendant's constitutional challenge to its application:

> Respondent contends, finally, that Congress was without con-
> stitutional power to revive, by enactment, an action which, when
> filed, is already barred by the running of a limitations period.
> This contention rests on an unwarrantably broad reading of our
> opinion in [*Danzer*]. *Danzer* was given a narrow reading in the
> later case of *Chase Securities Corp.* v. *Donaldson*, 325 U.S.
> 304, 312 n.8 (1945). The latter case states the applicable consti-
> tutional test in this language:
>
>> "The Fourteenth Amendment does not make an act
>> of state legislation void merely because it has some
>> retrospective operation. What it does forbid is tak-
>> ing of life, liberty or property without due process of
>> law . . . . Assuming that statutes of limitation, like

---

[1] "Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents* v. *Roth*, 408 U.S. 564, 577 (1972). The Court in *Campbell* does not appear to have consulted state law in this fashion. Rather, it seems to have held generally that limitations on contract actions go to the remedy, *see* 115 U.S. at 629, while the dissent took the contrary position, again as a general matter. *See id.* at 630–31 (Bradley, J., dissenting). A possible reconciliation is found in the comment in *Chase Securities* that *Campbell* "adopted as a *working hypothesis*, as a matter of constitutional law, the view that statutes of limitation go to matters of remedy, not to destruction of fundamental rights." 325 U.S. at 314 (emphasis added). If a defendant proves that state law establishes that statutes of limitations protect "fundamental rights," this presumption, we assume, can be overcome.

35

> other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment." *Id.* at 315–316.

> Applying that test to this litigation, we think that Congress might constitutionally provide for retroactive application of the extended limitations period which it enacted.

429 U.S. at 243–44 (omission in original).

A plausible interpretation if this passage is that Congress did not intend the limitations provisions in Title VII to condition the liability of defendants, and *Robbins & Myers* is thus a "remedy" case akin to *Campbell* and *Chase Securities*, rather than a "liability" case like *Danzer.*[2] In view of its endorsement of *Chase Securities*, the Court evidently meant to give *Danzer* a "narrow reading" by limiting it to situations in which the statute of limitations is an essential part of the cause of action.

On this understanding of the law, H.R. 2817 presents serious problems. If, under the law of a particular state, statutes of limitations are seen as conditioning liability with respect to any of the actions affected by the bill, then as to those actions retroactive application of the new commencement date would be an unconstitutional deprivation of property without due process. Many states have such rules. *See generally* 51 Am. Jur. 2d *Limitation of Actions* § 44 (1970); 16A Am. Jur. 2d *Constitutional Law* §§ 665–66 (1979). The consequence of this understanding of the law is the unfortunate spectacle of a statute fully constitutional in some states, partly constitutional in others, and wholly unconstitutional in still others (those that guarantee the vesting of limitation defenses).

There is, however, good reason to doubt whether this is an accurate statement of the law. The Supreme Court has recently addressed the constitutional power of Congress to *create liability* retroactively, holding broadly that the legislature has considerable leeway to impose liability for conduct that was legal when performed. In *Usery* v. *Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976), the Court considered and rejected a constitutional challenge to a congressional program for compensating victims of black lung disease. In particular, the Court upheld the retroactive imposition of liability on mine owners for black lung disease contracted by mine workers who had left employment *before* enactment of the compensation scheme. (The mine owners did not object to compensating current employees for disease contracted in the

---

[2] *But cf. United States Trust Co. of New York* v. *New Jersey*, 431 U.S. 1, 20 n.17 (1977) (the remedy/ obligation distinction in Contract Clause jurisprudence is "now largely an outdated formalism," though it "approximat[es] the result of a more particularized inquiry into the legitimate expectations of the contracting parties").

past.) The Court pronounced it "well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." 428 U.S. at 15. The Court noted that the statute "has some retrospective effect," *id.* at 16, but countered that "our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Id.* (citations omitted). The Court suggested that retrospective legislation might be subject to more heightened scrutiny than purely prospective acts and even intimated that it would not uphold the black lung statute if its rationale was deterrence of undesirable conduct. *Id.* at 16–17. But it found "that the imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor — the operators and the coal consumers." *Id.* at 18.

The Court recently reaffirmed *Turner Elkhorn* in *Pension Benefit Guaranty Corp.* v. *R.A. Gray & Co.*, 467 U.S. 717 (1984), which upheld the retroactive imposition of liability on employers who withdrew from certain pension plans within five months prior to enactment of a statute imposing additional costs on withdrawal from those plans. Relying on *Turner Elkhorn*, the Court emphasized that

> the strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively. Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches . . . .

467 U.S. at 729. The heightened burden that retroactive legislation must face "is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Id. See also United States Trust Co. of New York* v. *New Jersey*, 431 U.S. 1, 17 n.13 (1977) ("[t]he Due Process Clause of the Fourteenth Amendment generally does not prohibit retrospective civil legislation, unless the consequences are particularly 'harsh and oppressive'" (*dictum*) (quoting *Welch* v. *Henry*, 305 U.S. 134, 147 (1938)).

If Congress created a new cause of action for toxic torts and imposed retroactive liability, the statute would surely survive constitutional attack under *Gray* and *Turner Elkhorn*. Indeed, the parallels between such hypothetical legislation and the black lung statute upheld in *Turner Elkhorn* are striking, even to the likely cost-spreading rationale. But if this is true, it is difficult to see why Congress should be able to impose retroactive liability *directly* by creating a new cause of action, but not *indirectly* by extending backwards a statute of limitations (or new commencement date). An argument can thus be made that

*Danzer* is no longer good law. Nonetheless, *Turner Elkhorn* and *Gray* make no reference to *Danzer* or the other statute of limitations cases, nor do the latter cases refer generally to the former, even though *Turner Elkhorn* had been decided when *Robbins & Myers*, the most recent of the statute of limitations cases, was decided.

3. *Takings Clause.* An additional constitutional question may be raised under the Takings Clause of the Fifth Amendment. If liability is imposed *retroactively* on those who deal with toxic wastes in order to spread costs among the general public, defendants may argue that their property (*i.e.*, their freedom from liability by virtue of a state statute of limitations) is being taken for a public purpose without just compensation. However, the bill would likely survive a Takings Clause challenge under the "ad hoc, factual inquir[y]," *Penn Central Transportation Co.* v. *New York City*, 438 U.S. 104, 124 (1978), used by the Supreme Court in regulatory takings cases. *See, e.g., Connolly* v. *Pension Benefit Guaranty Corp.*, 475 U.S. 211, 223–28 (1986); *Ruckelshaus* v. *Monsanto Co.*, 467 U.S. 986, 1004–08 (1984); *PruneYard Shopping Center* v. *Robins*, 447 U.S. 74, 82–83 (1980). This inquiry looks to such factors as "the character of the governmental action, its economic impact, and its interference with reasonable investment backed expectations." *PruneYard Shopping Center*, 447 U.S. at 83. Because the government action contemplated by H.R. 2817 does not physically appropriate property for the government's own use, *see Connolly*, 475 U.S. at 224–25, and is likely to have little, if any, impact on "investment backed expectations," the revival of time-barred actions probably does not meet the standards for a regulatory taking.

4. *Other Issues.* Quite apart from the question whether Congress has the power to create retroactive liability through extension of state statutes of limitations, the bill raises a number of other issues. Because H.R. 2817 is not creating a new cause of action, but is merely engrafting a provision onto existing state actions, it is necessary to consider the effects this might have under state law. As was noted above, a number of states guarantee the vesting of limitations defenses. Accordingly, it is conceivable that some state courts may hold that state causes of action for toxic torts are not severable from the statute of limitations under state law and that the effect of the federal law purporting to alter the state statute of limitations is to invalidate the state cause of action *in toto*.[3]

Present case law would not *compel* state courts to take jurisdiction over these actions instead of invalidating the state compensation scheme. The Supreme Court held in *Testa* v. *Katt*, 330 U.S. 386 (1947), that state courts may not

---

[3] This raises the interesting question of whether such abrogation of liability without provision of a reasonable substitute would violate the due process rights of *toxic tort victims*. We know of no definitive precedent on this point, though a recent *dictum* of the Court suggests that it would not. *See Duke Power Co.* v. *Carolina Environmental Study Group*, 438 U.S. 59, 88 & n.32 (1978). *See also Silver* v. *Silver*, 280 U.S. 117, 122 (1929) (*dictum*). *But see New York Central R.R. Co.* v. *White*, 243 U.S. 188, 201 (1917) ("it perhaps may be doubted whether the State could abolish all rights of action [for personal injuries between employers and employees] on the one hand, or all defenses on the other, without setting up something adequate in their stead") (*dictum*).

decline to take jurisdiction over a federal cause of action on the ground that it is contrary to state policy. Here, however, no federal cause of action is at issue, and neither H.R. 2817 nor any existing federal statute requires a state to recognize a state cause of action for toxic torts or precludes a state from repealing any such existing cause of action.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*