## PETERSON v. PARSONS.

## McDONALD et al. v. FEDERAL CARTRIDGE CORPORATION.

### Civil Actions Nos. 2297, 2348.

District Court, D. Minnesota, Fourth Division.

Sept. 15, 1947.

842

Samuel I. Sigal and George W. Colburn, both of Minneapolis, Minn., for plaintiff Peterson.

Douglas Hall, Wyman Smith, and Kenneth J. Enkel, all of Minneapolis, Minn., for plaintiffs McDonald et al.

Richardson D. Barrett, of Minneapolis, Minn., for defendant Parsons.

Henry F. Simons, of Minneapolis, Minn., for defendant Federal Cartridge Co.

William S. Tyson, Sol., and Jeter S. Ray, Associate Sol., U. S. Department of Labor, both of Washington, D. C., and James M. Miller, Regional Atty., and Richard R. Converse, Atty., United States Department of Labor, both of Minneapolis, Minn., amici curiae in behalf of Administrator of the Wage and Hour Division, United States Department of Labor.

William D. Gunn, of Minneapolis, Minn., amicus curiae in behalf of Minnesota State Federation of Labor.

Cleon Headley and Harvey Hoshour, both of St. Paul, Minn. (Morgan, Chase, Headley & Hoshour, of St. Paul, Minn., of counsel), M. J. Doherty and Doherty, Rumble, Butler & Mitchell, all of St. Paul, Minn., A. Lyman Beardsley, of Minneapolis, Minn. (Kingman, Cross, Morley, Cant & Taylor, of Minneapolis, Minn., of counsel), Leavitt R. Barker, J. T. McCullen, Henry Halladay, Dorsey, Colman, Barker, Scott & Barber, J. B. Faegre, Loring M. Staples, George D. McClintock, and John S. Pillsbury, Jr., all of Minneapolis, Minn. (Faegre & Benson, of Minneapolis, Minn., of counsel), amici curiae.

NORDBYE, District Judge.

Motions in the above-entitled cases pursuant to Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to strike certain allegations from the complaint and answer were for convenience considered together in that the same law questions are involved.

These actions are brought by plaintiffs to recover overtime pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Motions by the plaintiff Walter H. Peterson and by the defendant Federal Cartridge Corporation have raised two general issues in each case: (1) Is Section 541.07(5) of Minnesota Statutes of 1945, M.S.A., applicable to these actions? (2) If Section 541.07(5) of Minnesota Statutes of 1945, M.S.A., is applicable in terms and intent, does it conflict with the federal and state constitutions?

Section 541.07(5) is a statute of limitations. It provides:

"The following actions shall be commenced within two years:

\* \* \* \* \* \*

"(5) For the recovery of wages, overtime, damages, fees or penalties accruing under any federal or state law respecting the payment of wages, overtime, damages, fees or penalties, \* \* \*.

"541.071 Retroactive; limitation. Causes of action accruing prior to the date [hereof], and barred by the provisions thereof, shall be commenced within six months after passage of this act, provided that nothing contained therein shall affect any action or suit for the recovery of wages, overtime, damages, fees, or penalties pending at the time of the passage of this act."

I. Is Section 541.07(5) Applicable to These Actions?

Plaintiffs contend that Section 541.07(5) does not apply here because the statute applies only to wage claims arising under a statute, whereas these claims arise ex contractu because the Fair Labor Standards Act must be read into, and be considered a part of, the contract of employment. Defendants contend, however, that because Section 541.07(5) applies to wage claims accruing under "any federal or state law", it applies both to claims arising at common law (ex contractu) and those arising under a statute, and that, in any event, the claims here do not arise ex contractu, but in reality arise under the Fair Labor Standards Act—a statute—and are within the provisions of Section 541.07(5).

Whether the Minnesota Legislature intended this section to apply only to wage claims arising under a statute or also to apply to wage claims arising under a contract may not be entirely clear, and in view of the conclusions reached herein need not be determined. But a consideration of the question presented above requires a finding that Section 541.07(5) is applicable to the instant claims. These claims in reality arise under thee Fair Labor Standards Act, a federal law, and therefore are among the types of claims intended by the Legislature to be covered by Section 541.07(5). That the actions herein really arise out of the Fair Labor Standards Act seems free from doubt. In fact, plaintiffs have based their actions in this Court upon that theory. They have invoked this Court's jurisdiction upon the theory that the instant actions arise out of the Fair Labor Standards Act—a federal statute—and therefore raise a question upon which this Court can act. If that position were not taken, this Court would have no jurisdiction. Moreover, there is in fact no contract between the employer and employee for overtime, for damages, and for attorneys' fees. Such provisions exist under the contract of employment, if at all, only in a fictional sense, and only because of the Fair Labor Standards Act's provisions. This action and the liability sought to be enforced here would not exist but for the Fair Labor Standards Act. Realistically speaking, the rights in these actions are clearly dependent upon the federal statute, not the contract.

Section 541.07(5) provides that, if a wage claim accrues under a federal or state law, the two-year limitation period applies. The Fair Labor Standards Act, of course, is a federal law. The wage claims herein concerned arose under and by virtue of that federal law. That Section 541.07(5) was intended to apply to actions like the instant ones seems to follow necessarily from the plain words of the statute, for the statutes which in reality create the rights are the basis upon which the limitations statute is predicated. The Court must recognize that intent and interpret the legislative intent in a practical and realistic manner. No good reason is presented why the Court should indulge in any strained interpretation in view of the problem presented.

To adopt plaintiffs' contention that these actions are in contract with respect to the statute of limitations problem would ignore the factual and realistic situation and would unduly extend the fiction upon which their theory is based without regard to the intent of Section 541.07(5). This section makes no distinction between situations in which the statute is a part of the contract and situations in which it is not. It only requires that the action arise under federal or state law. Its terms are broad and applicable even if the wage statute must be read with the contract and considered a part of it. It does not contemplate that the Fair Labor Standards Act or any other wage statute loses its identity, or merges beyond recognition, with the employment contract so that it is such a part of that contract that, for statute of limitations purpose, it becomes subject to the contract statute of limitations rather than to Section 541.07(5). On the contrary, its very existence controverts any construction leading to that result, for to consider that the wage statute loses its identity when read with the employment contract is to refuse to give effect to Section 541.07(5) and renders it ineffective and inoperative. To contend that the Legislature intended to enact such a statute seems manifestly unsound. The statute does not except the Fair Labor Standards Act from the general scope of "federal" laws which it may affect. To except the Fair Labor Stand-

ards Act from its provisions in view of the statute's all-inclusive words would render the term "federal" redundant and surplusage. In fact, plaintiffs contend that all state laws under which wage claims could arise also must be read into the employment contract. So, according to plaintiffs, Section 541.07(5) could apply to no wage claims whatsoever.

■ Because a wage statute may become in some instances at common law a part of the employment contract between the employer and employee does not necessarily determine the applicability of Section 541.07(5) here. The intent with which the Legislature passed that statute of limitations is the determining factor. That factor determines the provision's scope and meaning, for it is agreed, and has often been decided, Republic Pictures Corporation v. Kappler, 8 Cir., 151 F.2d 543, 162 A.L.R. 228, that the state statute of limitations can apply when the federal act contains none. What the meaning and intent of the state Legislature is with respect to the meaning and scope of the state statute of limitations therefore necessarily controls. So, if the Minnesota Legislature intended to reach these types of claims under this statute, and did so constitutionally, it makes no difference whether or not the wage statute is a part of the contract of employment by virtue of common law fiction. The Circuit Court of Appeals of this Circuit apparently was conscious of this in Kendall v. Keith Furnace Co., 8 Cir., 162 F.2d 1002. In that case, the court considered only the meaning and validity of the Iowa statute of limitations sought to be applied to wage claims. It did not consider if the action was based on contract or any other theory.

Everyone agrees that some Minnesota statute of limitations is applicable. Section 541.05 of Minnesota Statutes of 1945, M.S.A., provides: "The following actions shall be commenced within six years: (1) upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed." If the instant claims are, in a sense, based upon contract, there is not the slightest doubt that the Legislature intended to "expressly

prescribe" in the two-year statute now under consideration that such limitation should apply to claims which, in reality, arise under the Fair Labor Standards Act as well as to those actions arising under other federal wage statutes or under state wage statutes. That intent controls. The only question of any moment involves the Act's validity under the federal and state constitutions.

II. Does Section 541.07(5) Violate the Federal and State Constitutions?

■ The United States Supreme Court has reiterated consistently that a statute's constitutionality is presumed until disproven, and that every reasonable doubt must be resolved in favor of constitutionality. Consequently, the plaintiffs, who attack the statute's validity here, must assume the burden to prove its invalidity under the federal and state constitutions. They claim that it discriminates against rights arising under federal law, interferes with and defeats the purpose of federal legislation, deprives persons of property and property rights without due process of law, denies equal protection of the laws, interferes with interstate commerce, creates an unreasonable classification, and arbitrarily classifies particular kinds of wage claims. But these claims and contentions cannot be sustained.

If, as plaintiffs contend, the Legislature intended to aim this statute solely at Fair Labor Standards Act actions, it did not make that intent effective. The statute also is applicable to Section 177.15 of Minnesota Statutes of 1945, M.S.A., which pertains to the rights of a minor or female employee to recover the difference between the wages actually paid and the minimum fixed by the order of the Industrial Commission, together with costs and attorneys' fees; it applies to Section 181.11 of Minnesota Statutes of 1945, which provides, among other things, that an employee in certain transitory employment may recover the amount of his average daily earnings for a period of fifteen days after termination if wages actually due are not paid within a designated time after termination; and it applies to Section 181.13, which provides

that an employee who is discharged may recover the amount of his average daily wage for a period up to fifteen days in the event wages actually due him are not paid within 24 hours after his discharge.

■ That the effective intent, not the mental intent, of the Legislature must prevail is evident from the unanimous decision of the Eighth Circuit Court of Appeals in Kendall v. Keith Furnace Co., 162 F.2d 1002, 1005. Judge Johnsen said of the Iowa statute of limitations therein concerned:

"In a legal sense, as a basis for challenging a state statute, 'manifest hostility to federal rights' is not a question of the mental frame of the legislators in enacting a statute but a matter of what the statute itself provides or does."

There is no "license," he said, "to void a statute on the psychological motives of the legislature. * * * It does not therefore make [the Iowa statute of limitations] invalid, even though it be true, as appellants assert, that, if no Fair Labor Standards Act had been on the federal statute books, the Iowa statute would never have been enacted. And in the application of a state statute of limitations to rights under a federal law, where the statute has been regularly enacted, where there are rights of the same general class under state law to which the statute is applicable, where the operation of the statute is uniform upon the legally similar state and federal rights, and where the period of limitations fixed is not clearly unreasonable for enforcing the federal right in the state, there will be no occasion ordinarily to test the state statute further. Cf. Pufahl v. Estate of Parks, 299 U.S. 217, 225, 227, 57 S.Ct. 151, 81 L.Ed. 133; Campbell v. City of Haverhill, 155 U.S. 610, 615, 15 S.Ct. 217, 39 L.Ed. 280."

■■ Plaintiffs emphasize that most of the wage actions affected by Section 541.07(5) are Fair Labor Standards Act actions. But that is the result of present circumstances, not necessarily of hostile legislative intent. The difference in numbers of actions under various wage statutes does not indicate that the statute is aimed solely at the one under which most actions arise. If that were the situation, few statutes of limitation could be ˒alid when they only concern actions arising under statutes. Nothing in the record before the Court shows that the Legislature expected that the number of wage and hour actions would remain high or that the wage claims under Minnesota wage statutes would remain low. And, although the number of *actions* brought on claims arising under the Minnesota wage statutes may be comparatively small, it seems quite clear that this does not mean that numerous *claims* do not arise under them. Plaintiffs have gone only to Shepard's Citator to determine the number of actions arising under the Minnesota wage statutes. That citator, of course, does not purport to show the number of claims arising under a given statute but settled prior to trial. Nor does it show the number of cases arising in the lower courts, and not appealed. Because few cases may go to trial or be appealed under Minnesota wage statutes does not mean that the Legislature did not intend to enact, or did not enact, a statute of limitations which was in good faith intended to apply to similar wage actions under all statutes to which it could properly apply. To permit the number of cases arising under the Fair Labor Standards Act as compared to the state wage statutes to be of controlling importance ignores what the Legislature actually did and assumes the unreasonableness of classification. Every state statute which pertains to wages is included within this statute of limitations. Due consideration has been given to Caldwell v. Alabama Dry Dock Co., 5 Cir., 161 F.2d 83. But in that the Minnesota statute pertains to wage claims under a state statute as well as wage claims under a federal statute, there is no discrimination against wage earners engaged in commerce, as existed in the Caldwell case. There, as the court found, the obvious effect of the Alabama statute would be only to limit wage claims under the Fair Labor Standards Act, and none other. The same observation is pertinent as to the decision of this Circuit in Republic Pictures Corporation v. Kappler, supra, wherein the first

Iowa statute of limitations was declared unconstitutional. The record does not justify the sustaining of plaintiffs' claim that Section 541.07(5) is hostile to the Fair Labor Standards Act.

Moreover, as in Kendall v. Keith Furnace Company, supra, the recent enactment of the Portal-to-Portal Act, Public Law 49, 80th Congress, approved May 14, 1947, 29 U.S.C.A. § 251 et seq., renders unnecessary a detailed discussion of plaintiffs' claims that Section 541.07(5) unreasonably interferes with and defeats the purpose of the Fair Labor Standards Act and unreasonably interferes with federal regulation of interstate commerce. Section 6 of the Portal-to-Portal Act provides:

"Sec. 6. Statute of limitations. Any action commenced on or after the date of the enactment of this Act to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, * * *

"(a) if the cause of action accrues on or after the date of the enactment of this Act—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued;

"(b) if the cause of action accrued prior to the date of the enactment of this Act—may be commenced within whichever of the following periods is the shorter: (1) two years after the cause of action accrued, or (2) the period prescribed by the applicable State statute of limitations; and, except as provided in paragraph (c), every such action shall be forever barred unless commenced within the shorter of such two periods;

"(c) if the cause of action accrued prior to the date of the enactment of this Act, the action shall not be barred by paragraph (b) if it is commenced within one hundred and twenty days after the date of the enactment of this Act unless at the time commenced it is barred by an applicable State statute of limitations."

Section 541.07(5) obviously is in accord with what the Congress believes is a proper limitation upon rights which it created

and with the purpose of which Congress is completely familiar. If Congress limits the Fair Labor Standards Act with a statute of limitations no more liberal than Section 541.07(5), it would seem presumptuous and unsound for this Court to hold that Section 541.07(5) unreasonably interferes with the operation and purpose of the Fair Labor Standards Act. In Kendall v. Keith Furnace Co., supra, the Circuit Court of Appeals for this Circuit also held that, in view of Section 6 of the Portal-to-Portal Act, the recent Iowa statute of limitations creating a two-year period in which actions must be brought (as does Section 541.07(5) here), did not unreasonably interfere with interstate commerce.

The only contentions which require further discussion are plaintiffs' claims concerning equal protection and arbitrary classification. In furtherance thereof, plaintiffs contend that it is unreasonable to limit the right to bring an action on a wage claim arising under a statute to two years when an action on a wage claim arising under a contract may be brought within six years from the date it accrues. But wage statutes are enacted by the legislative bodies. Their language necessarily must be general. The exact meaning of these statutes, and the duties under them, is not always clear to the individual employers. The language is not theirs. Whether it is applicable to their situation may be open to question. The language invariably is the subject of litigation to determine its meaning. The meaning of the law may change with various court interpretations. Trial courts in various localities often disagree as to the statute's meaning. The employer who abides by the decision of one court may find that the trial court in his locality, and perhaps eventually the appellate courts, may adopt a different construction than the one he and his employees first followed in the good faith belief that the Legislature used certain words to express a certain intent which imposed certain duties and created certain rights with respect to their employment relationship. When Section 541.07(5) was enacted, agreement between the employer and employee as to the meaning of the Wage and Hour Act did not necessarily protect the employer against liabil-

ity if their interpretation was erroneous. As a result, an employer might, in spite of his good faith and the cooperation of his employees, find himself mulcted in claims, damages, and penalties which he could not reasonably have avoided and which both he and his employees in their acts and talks had assumed were not warranted or desired. The wage claims, rights, and duties are, because of the general nature of statutes, uncertain until a determination is made by a court with respect to the particular employment relationship and with respect to each question which could possibly arise. And in reality there is nothing which an employer can do about determining the rights prior to the commencement of actions against him unless he engages in declaratory judgment litigation. The employer must operate his business upon the assumption that he is correct in his interpretation of the statutes and run the risk that damages are accumulating. If his interpretation is wrong, he can be subjected to liability from the time the wage statute was enacted, unless a statute of limitations prevents it.

This situation does not arise to as great an extent, if at all, under a contract of employment, however. Wage provisions in contracts of employment are not subject to the uncertainties existing with respect to wage statutes. They are drafted or created by or for the parties who are bound by them. There is less doubt as to who the parties to the contract are, and as to what the provisions mean. Consequently, there is less doubt as to whom the contract liability affects, and whether an employer or employee is bound. The parties use their own language, and their agreed meaning of words is one of the aids for interpreting the contract if litigation arises over it. If either the employer or employee entertains doubt as to the meaning of the contract provisions, the matter can be handled between them and often without litigation. The controversy, if one develops, can be finally determined by their own agreement. The employer is liable because of his agreement and intent, not despite it, as he often is under a statutory wage liability. The employer is not required to sit by and continue his employment relationship on uncertainties which may, in spite of the good faith involved, impose penalties upon him. He can avoid or mitigate to a greater extent future losses for wage liability.

Thus, a lesser period in which to bring statutory wage actions than to bring contract wage actions seems proper in view of the comparative control which the employer has over wage liability under these respective situations. Moreover, a contract of employment claim usually does not offer at the trial the problems of proof encountered by statutory wage claims. The contract permits more definite proof, and the longer period of limitations for a contract claim does not risk the injustices arising under a statute of limitations of similar duration for statutory wage claims. In Section 541.07(5) the Minnesota Legislature permits the employee two years in which to bring his action on wage claims arising under a statute. Congress has declared by Section 6 of the Portal-to-Portal Act that two years is a proper time, in view of the purpose and intent of the Fair Labor Standards Act, within which such an action should be brought under the Fair Labor Standards Act. If, in the light of the purpose and intent of the federal statute under which the action is brought, two years is an adequate time in which to bring an action, no unreasonableness seems to exist in a state statute of limitations which also creates such a period. And because the Minnesota Legislature enacted the state statutes affected by Section 541.07(5), it seems quite clear that it must be considered to be the authority which can best determine if the intent and purposes of those statutes are safeguarded by Section 541.07(5).

Considerable emphasis is placed by the plaintiffs upon the claimed inequities and incongruous results which will ensue if this law is upheld. They point out that a wage earner who has a contract for overtime would have six years in which to assert his claims for overtime, whereas another wage earner engaged in the same line of work and under the same circumstances, but who had no contract, is penalized because he must proceed within two years. This seeming inequitable result, however, is no reason for striking down the law.

It must be assumed that the Legislature took such factors into consideration and weighed the benefits as well as the apparent inequities that might at times result from a rigid limitation on statutory wage claims which were less than that accorded to contract claims. It does not mean that no reasonable basis for discrimination existed. In the present Portal-to-Portal Act, the statute of limitations therein contained will create in most states the same situation of which plaintiffs now complain concerning Section 541.07(5); that is, the contract employee will in all probability be given the longer period in which to assert his claim for overtime than is given those who are now limited by the federal law.

As the Supreme Court recognized in Chase Securities v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628, when passing on a state statute of limitations:

"Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. * * * They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. * * * the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control."

The legislation herein concerned—Section 541.07(5)—applies to all persons of the same class, not to particular members of a class. They are, as a class, given the same rights to enforce their claims in any court having jurisdiction, and without any impediment or hindrance whatsoever within the time allotted by the statute. As the United States Supreme Court observed in Metropolitan Casualty Ins. Co. of New York v. Brownell, 294 U.S. 580, 584, 55 S. Ct. 538, 540, 79 L.Ed. 1070, when that court upheld a statute setting different periods of limitations under insurance policies issued by domestic and foreign corporations:

"* * * A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it."

Upon the premises noted, a reasonable basis for the distinctions created by Section 541.07(5) exists. This statute does not violate the constitutions either of the United States or the State of Minnesota. It is a valid statute.

Therefore, the motion of the plaintiff Walter H. Peterson to strike from the defendant's answer in Civil Action No. 2297 the defense that Section 541.07(5) of Minnesota Statutes of 1945, M.S.A., is applicable and bars certain claims set forth in the complaint, is hereby denied. It is so ordered. The motion by Federal Cartridge Corporation to dismiss those allegations in the complaint in Civil Action No. 2348 to the extent to which they seek overtime for periods barred by Section 541.07(5) of Minnesota Statutes of 1945, M.S.A., is hereby granted. It is so ordered.

An exception is allowed to each and every aggrieved party.