PER CURIAM:
Respondent’s Motion(s) to Dismiss were heard by the Court on July 19, 1991 in the following titled matters.
In Claim No. CC-91-190, claimant sought additional compensation for extra work and related expenses arising out of a certain contract for road resurfacing, more specifically identified as the Cross Creek resurfacing in Brooke County, Project No. S305-7-2.02. It appears uncontroverted that the parties entered into a contract for road resurfacing approximately 2/6 miles of this state highway on or about May 29, 1990. Claimant avers that the contract did not include nor adequately compensate it for the installation of shoulder and ditches commensurate with the project. Claimant contends the extra work caused it to incur anticipated and uncompensated costs in the amount of $5,315.44 plus pre-judgment interest. Respondent argued that claimant failed to file a timely and proper claim for the enumerated extra work, as required by Standard Specification 109.8-Acceptance and Final Payment, a provision incorporated by reference and extant within all same or similar state highway construction contracts. Specification 109.8 requires that the contractor file any claim which it has reserved on the Final Voucher Estimate with the Court of Claims within 120 days of the execution of the Final Voucher Estimate. It is uncontroverted that claimant did not file a claim for the extra work within the 120 day period. The Final Voucher Estimate was executed by the claimant on December 7,1990, and the subject claim was filed on June 6,1991, 181 days later.
In Claim No. Cc-91-191, claimant sought additional compensation for traffic control expense and a substantive change in the scope of the resurfacing of the McKeffery-Moundsville Road in Marshall County, more specifically designated as Project No. F-0002(162)L (S326-2-15.57). Claimant asserts additional costs of $11,033.79 for the traffic control, and $50,000.00 plus interest for the requested non-performance of a major item of the contract, resulting in loss of contribution to overhead. The Final Voucher Estimate for the completed project was executed by the claimant on December 11, 1990, and the subject claim was filed on June 6, 1991,177 days later.
This Court has previously held that a failure to meet contractually established filing dates is jurisdictional and bars further consideration of the claim. See Central Asphalt Paving Co. v. State Road Commission on W.Va., 9 W.Va. Ct. of Cl. 277 (1973), and more recently, Tri-State Asphalt Corp. v. W. Va. Department of Highways, Claim No. CC-88-79, an unpublished Opinion sustaining a dismissal issued April 21, 1989.
Accordingly, upon due consideration of the pleadings, exhibits, written memoranda and argument of counsel, the Court is of the opinion to, and does hereby, sustain respondent’s Motion(s) to Dismiss both Claims, CC-91-190 and Cc-91-191.
The Court has been requested to consider whether the 120 day provision is unreasonably limited.
*18 Whether the 120 day period is too limited is a separate and distinct issue. In Central Asphalt Paving Ct. v. The State of West Virginia and the State Road Commission of West Virginia, 9 W.Va. Ct. of Cl. (1973), this Court formally addressed the issue of whether a contractual provision fixing a 90 day limitation, which differs from the time fixed by the general statute of limitations, 10 years, is valid and enforceable. The Court held that ‘such contractual provisions fixing a limitation period, unless precluded by statute or public policy, or unless the same are unreasonable or unreasonably short, are binding on the contracting parties and will relieve the obligor from the general imitation statute.” See W.Va. Code, 55-2-6a.
Contractual limitation provisions appear frequently in insurance polices, fraternal benefits certificates, bonds, and various other types of contracts. Accordingly, the 120 day limitation as it is voluntarily entered into, does not appear unreasonable, and properly supersedes the general limitations. See 6 A.L.R. (3d) 1197. The purpose of the 120 day limitation was to bring an end and resolve disputes relating to the construction contract, and does not appear to cause or create an undue advantage to either party.
However, in O’Neil v. City of Parkersburg, 160 W.Va. 649, 237 S.E.2d 504 (1977), the West Virginia Supreme Court of Appeals struck down a 30 day limitation for filing a notice of claim for municipal negligence. The Court held that such an abrupt notice period was a violation of equal protection and due process. The Court more recently stated in Gibson v. W.Va. Dept. of Highways, _ W.Va. _, May 24, 1991, that the time period (limitation) must bear some rational relationship to the goal to be achieved by the statute, and the goal must not abridge constitutional rights.
The purpose for the 120 day provision herein is to provide finality to the construction contract such that payment may be made, with notice of residual or unliquidated claims. Unlike the 30 day municipal limitation for reserving a claim, the 120 days was mutually agreed to, voluntarily entered into, and does not abridge constitutional rights. In construing a similar limitation relating to Workers’ Compensation claims, the W.Va. Supreme Court of Appeals held that these limitations have never been held to contravene the constitutional provision against the impairment of a contract. The Court observed that the limitations do not impair contracts, but merely require prompt enforcement thereof. The Court also observed that contractual limitations do not destroy or affect any vested interest or rights. Taylor v. W.Va. Workers' Compensation Comm. 140 W.Va. 572, 86 S.E.2d at 118 (1955).
The Court rhetorically asks in Taylor, “Is a workman’s compensation claim inherently of such a different character or of such higher sanctity that it should be singled out and held immune to a statute of limitation?” Likewise, the Court of Claims may properly ask whether the construction claim is to be so immune, especially when one considers that the limitations was contractually and voluntarily accepted.
In summary, voluntary construction limitations such as the 120 days supersede the general statute of limitations, and are reasonable if not so short as to abrogate arbitrarily a right of action. *19 The 120 days provides finality for both the contractor and the State for the receipt of payment and the assessment of contingent liabilities for said work against the State budget. Accordingly, public policy is not violated by such a fiscal planning tool, or are the rights of the contractor prejudiced by its application. Claimant has not argued why 120 days is too limited, and the Court need not speculate as to same. The United States Supreme Court once stated, “Statutes of limitation find their justification in necessity and convenience rather than in logic...They have come into the law not through the judicial process, but through legislation. They represent a public policy about the privilege to litigate. ” Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628. Establishing or legislating public policy in terms of limitations of actions is generally not within the jurisdiction of the Court of Claims.
Accordingly, the Court sustains the Motions and these claims are dismissed.
Claims dismissed.