NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RANDA DRIVER, *Plaintiff/Appellant,*

*v.*

ARIZONA DEPARTMENT OF REVENUE, *Defendant/Appellee.*

No. 1 CA-TX 18-0006
FILED 6-11-2019

Appeal from the Arizona Tax Court
No. TX2017-000183
Maricopa County Superior Court
No. LC2016-000509-001
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Randa Driver, Scottsdale
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Benjamin H. Updike
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**C R U Z**, Judge:

¶1 Randa Driver appeals from the grant of summary judgment in favor of the Arizona Department of Revenue (the "Department") finding Driver liable for luxury and use tax on the cigarettes she purchased over a three-year period. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 Between January 1, 2007 and November 30, 2009 (the "Assessment Period"), Driver purchased cigarettes from Chavez, Inc. ("Chavez"), a company that sold cigarettes by phone and over the Internet. In 2010, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") investigated Chavez for the unlawful diversion of tobacco products. Chavez pled guilty to wire fraud and admitted to running "an illegal retail cigarette trafficking business" and selling unstamped cigarettes on which no tax was paid.

¶3 During the investigation, ATF identified the Arizona customers to whom Chavez had sold and shipped cigarettes and provided their names and purchase information to the Department. Using that information, the Department issued Driver a Notice of Proposed Assessment ("Notice") reflecting that she owed $4,473.89 in luxury and use tax, plus interest.

¶4 Driver protested the assessment. At a hearing before the Office of Administrative Hearings, the Administrative Law Judge ("ALJ") deducted five invoices from the assessment, concluding that Driver's sister had made those purchases, but upheld the remaining assessment. Driver appealed the ALJ's decision to the Department Director, who affirmed. She then appealed to the Board of Tax Appeals ("BOTA"), who also affirmed.

¶5 After exhausting her administrative remedies, Driver appealed to tax court. The parties filed cross-motions for summary judgment. The court granted the Department's motion and denied Driver's. After entry of final judgment, Driver appealed. We have

jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2019).

## DISCUSSION

**¶6**         We review the tax court's grant of summary judgment *de novo*. *See Wilderness World, Inc. v. Dep't of Revenue State of Ariz.*, 182 Ariz. 196, 198 (1995). In doing so, we view the facts in the light most favorable to Driver, the party against whom judgment was entered. *See Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 568, ¶ 2 (1998).

I.      Luxury and Use Tax

**¶7**         Driver first argues the tax court erred in granting summary judgment because Chavez "legally owed all taxes on cigarettes sold into this state" and, therefore, Driver is not liable for the tax.

**¶8**         Arizona imposes a luxury privilege tax on all cigarette purchases. *See* A.R.S. § 42-3051 (2019). Under Arizona law, cigarettes cannot be sold unless the luxury tax has been paid and an official tax stamp is affixed. *See* A.R.S. § 42-3452 (2019), formerly A.R.S. § 42-3202 (2006). A tax stamp is evidence that luxury tax was paid, and the law presumes that unstamped cigarettes "are intended for first sale by the person and are subject to the taxes imposed by this chapter." A.R.S. § 42-3453 (2019), formerly A.R.S. § 42-3202.01 (2006); *see also* A.R.S. § 42-3452 (2019), formerly A.R.S. § 42-3202 (2006). "First sale" means either "the initial sale or distribution in intrastate commerce" or "the initial use or consumption of cigarettes." A.R.S. § 42-3001(10) (2019), formerly A.R.S. § 42-3001(12) (2006).

**¶9**         Current Arizona law prohibits the purchase of cigarettes by telephone, Internet, or mail. *See* A.R.S. § 36-798.06 (2019); 2012 Ariz. Sess. Laws, ch. 311, § 2 (2nd Reg. Sess.). Under current law, an individual cannot possess unstamped cigarettes unless that person is a licensed cigarette manufacturer, importer or distributor, or has a proper bill of lading. *See* A.R.S. § 42-3457(A) (2019). During the Assessment Period, however, phone and Internet cigarette sales were permitted and were governed by the "Delivery Sales" statutes. *See* A.R.S. §§ 42-3221 to -3230 (2006), repealed by 2012 Ariz. Sess. Laws, ch. 3, § 20 (2nd Reg. Sess.).

**¶10**        At the time Driver was purchasing cigarettes from Chavez, an individual could possess unstamped cigarettes for his or her own use and consumption *if* the person complied with certain requirements. *See* A.R.S. § 42-3205(A) (2006). To legally possess unstamped cigarettes, the individual had to register with the Department "on a form and in a manner

prescribed" by the Department and remit luxury tax within ten days after receipt of the unstamped cigarettes. *See* A.R.S. § 42-3201(C) (2006). The prescribed registration form was Arizona Form 800DS, entitled the "Cigarette Tax Return" required for "unstamped cigarettes imported into Arizona."

**¶11**        Driver purchased cigarettes from Chavez for her own use or consumption in Arizona. No tax was paid on those cigarettes. Although required under law to file a Form 800DS and remit taxes to the Department, Driver did neither. Therefore, she is liable for the unpaid luxury tax.

**¶12**        In addition to luxury tax, Arizona also imposes a tax on the use or consumption of tangible personal property purchased from an out-of-state retailer. *See* A.R.S. § 42-5155(A) (2019). A purchaser is personally liable for use tax. *See* A.R.S. § 42-5155(F) (2019), formerly A.R.S. § 42-5155(E) (2006). This court has previously explained the distinction between the transaction privilege tax and the use tax: "In contrast to the transaction privilege tax, which is imposed on transactions consummated within Arizona, a use tax is designed to reach out-of-state sales of tangible personal property to Arizona purchasers." *See Ariz. Elec. Power Coop., Inc. v. Ariz. Dep't of Revenue*, 242 Ariz. 85, 87, ¶ 7 (App. 2017).

**¶13**        The record reflects that, over the course of three years, Driver purchased cigarettes from Chavez, an out-of-state retailer, and used or consumed the cigarettes in Arizona. Thus, Driver is liable for use tax.

**¶14**        Driver's complaint alleged that "[t]he remote tobacco seller [Chavez], NOT the buyer, was legally required to collect and remit all Arizona taxes owed at the time of taking the internet order." Driver is correct that under the Delivery Sales statutes, "[e]ach person accepting a purchase order for a delivery sale" was required to "collect and remit to the [D]epartment all taxes imposed on tobacco products by this state." A.R.S. § 42-3227 (2006). Chavez failed to comply with the Delivery Sales statutes. Its failure, however, does not relieve Driver of tax liability. As a purchaser of unstamped cigarettes, Driver was still liable for payment of luxury and use tax. *See* A.R.S. §§ 42-3201(C) (2006); -5155 (2006).

**¶15**        Because the tax court properly determined that Driver was liable for luxury and use tax on her cigarette purchases, we affirm the entry of summary judgment.

II.     Statute of Limitations

**¶16**          Driver next argues the assessment is barred by the four-year statute of limitations set forth in § 42-1104.  This statute authorizes the Department to make a deficiency assessment within four years after a return is either filed or required to be filed, whichever date comes later.  *See* A.R.S. § 42-1104(A) (2019).  The assessment here reached back more than four years.

**¶17**          Section 42-1104(B), however, provides exceptions to the four-year limitation period and authorizes the Department to assess a tax deficiency "at any time" if the taxpayer fails to file a return.  *See* A.R.S. § 42-1104(B)(1)(b) (2019).  We review the application of § 42-1104 *de novo*.  *See Ader v. Estate of Felger*, 240 Ariz. 32, 36, ¶ 9 (App. 2016) (applying *de novo* review to the interpretation of statutory time limitations).

**¶18**          Driver does not contend that she filed a Form 800DS, the cigarette tax return.  Therefore, the Department's assessment falls within the exception to the four-year statute of limitations applying when a taxpayer fails to file a return.  *See* A.R.S. § 42-1104(B)(1)(b) (2019).  Because the Department's assessment is not time barred, we affirm the entry of summary judgment.

III.    Due Process of Law

**¶19**          Finally, Driver argues that the tax court deprived her of due process of law in violation of the Fourteenth Amendment of the United States Constitution.  This court reviews Driver's constitutional claim *de novo*.  *See In re Estate of Snure*, 234 Ariz. 203, 204, ¶ 5 (App. 2014).

**¶20**          "Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner."  *Huck v. Haralambie*, 122 Ariz. 63, 65 (1979).  The Department provided Driver with the Notice, as required by law, and she had an opportunity to be heard in the administrative proceedings. Driver protested the Notice in a hearing before the Office of Administrative Hearings, where the ALJ reduced the amount of the assessment.   Driver then appealed the ALJ's decision to the Department Director.  After the Director affirmed the ALJ's decision, Driver appealed to the BOTA where she was given a second hearing.  From there, she appealed to tax court.   Driver was provided notice and ample opportunity to be heard.

**¶21**          Driver also argues that "the opportunity to defend on statute of limitations grounds is a vested right protected by due process."  As the

United States Supreme Court has explained, however, the right to shelter from a statute of limitations is not a "fundamental" or "natural right." *See Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945).

> Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. . . . Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

*Id.* (citation omitted); *see also Lucia v. United States*, 474 F.2d 565, 569-70 (5th Cir. 1973) ("[T]here is no substantive or fundamental right to the shelter of a period of limitations.").

**¶22** The Arizona legislature has provided a four-year statute of limitations to taxpayers but has declined to extend that protection to taxpayers who fail to file their returns. *See* A.R.S. § 42-1104 (2019). Other states have established similar limitations. *See, e.g.*, *Zignego Co., Inc. v. Wisconsin Dep't of Revenue*, 565 N.W.2d 590, 593 (Wis. Ct. App. 1997) (holding that "if a sales and use tax return is never filed," the statute of limitations "never begins to run"); *Dye Constr. Co. v. Dolan*, 589 P.2d 497, 498 (Colo. Ct. App. 1978) (holding that if a taxpayer fails to file a return, the taxing authority is not bound by the statute of limitations).

**¶23** Driver had no fundamental right to the statutory four-year statute of limitations, and there was no violation of her due process rights.

**CONCLUSION**

**¶24**         For the foregoing reasons, we affirm the tax court's decision. We award costs to the Department upon compliance with Arizona Rule of Civil Appellate Procedure 21.

