**RADIO POSITION FINDING CORPORATION, Plaintiff,**

v.

**The BENDIX CORPORATION, Defendant.**

No. 12096.

United States District Court
D. Maryland.

June 8, 1962.

Richard S. Wright, Baltimore, Md., Nelson Moore, William D. Hall, Elliott I. Pollock, Washington, D. C., for plaintiff.

Benjamin C. Howard, Baltimore, Md., Harold J. Birch, Edward J. Irons, William W. Beckett, Washington, D. C., for defendant.

Before SOBELOFF, Circuit Judge, and R. DORSEY WATKINS and WINTER, District Judges.

WINTER, District Judge.

Plaintiff, an assignee of Patent No. 2,803,819, sued defendant for infringement. The patent was issued to Colonel W. R. Blair on August 20, 1957, upon his application dated June 7, 1945, (a) after a previous application had been rejected by the Patent Office as not filed within the one-year time limitation embodied in 35 U.S.C.A. (1954), § 102(b),[1] and (b) after the enactment of Private Law 1008, approved September 27, 1950, 64 Stat. A243, to relieve Blair of this requirement.

When defendant, by its motion for a declaration of invalidity and for a permanent injunction restraining the enforcement of Private Law 1008, interposed the defense, *inter alia*, of the unconstitutionality of the statute, a three-judge court was convened pursuant to 28 U.S.C.A. (1950), §§ 2282 and 2284.[2]

The patent which was issued for an Object Locating System (the electronic device commonly known as radar), describes the invention as follows:

"This invention relates to a radio system comprising transmitting and receiving elements for the location of distant objects.

"More particularly, the invention relates to a method and means for determining the position of distant objects by means of reflected radio waves, and the detection or discovery of the presence of invisible objects, such as enemy aircraft, and the determination of their position in range and direction with sufficient rapidity and accuracy as to be of immediate use, such as to anti-aircraft gunners."

---

1. 35 U.S.C.A. (1954), § 102(b), reads:
"A person shall be entitled to a patent unless—
       ∗       ∗       ∗       ∗       ∗
"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States ∗ ∗ ∗."

2. 28 U.S.C.A. (1950), § 2282, reads:
"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."
Section 2284 establishes the composition and the procedure for the three-judge court.

Blair's original patent application having been rejected, Private Law 1008 was enacted by the 81st Congress, and approved by the President, upon the representations made to both Senate and House Committees on the Judiciary that Major William R. Blair, Signal Corps (now Colonel William R. Blair, U. S. Army, retired), had conceived this invention at an early date and gradually evolved it to the system described in the patent and had demonstrated it before a group of high Government officials a few years before World War II, but that Major Blair had been specifically ordered by his commanding officer to keep the invention secret and not to file a patent application thereon. The text of the Act is set forth below.[3]

Defendant's briefs and oral argument took a wide range. Defendant asserts the invalidity of Private Law 1008 because (a) it does not grant an "exclusive right" within the meaning of Article 1, § 8, Clause 8, of the Constitution, since it purports to preserve the rights of persons manufacturing or using the invention authorized to be patented, or in possession of any rights in a conflicting patent or application for a patent, (b) the statutory bar of one year prescribed by 35 U.S.C.A. (1954), § 102(b), had become effective against Blair, hence his invention had entered the public domain and Private Law 1008 undertaking to allow him thereafter to obtain a patent was in derogation of an existing right of the public, thereby denying substantive due process of law, and, (c) the effect of Private Law 1008 was to deny procedural due process to holders of other conflicting patents to contest priority of invention.

Defendant argues the equities of the respective parties, questions the motivations underlying the legislation and the soundness of the reasons asserted in the Congressional committee reports in support of the legislation, and questions whether, in actuality, the special law accomplishes what its sponsors professed and even whether they and Congress fully understood the consequences of the legislation.

A substantial portion of this argument presents considerations which are not for us to weigh and determine. The function of this three-judge court is the limited one of deciding whether the Act is repugnant to the Constitution of the United States, and we think that there are only three grounds of constitutional attack which merit our consideration, namely, whether Private Law 1008 violates the concept of exclusiveness contained in Article 1, § 8, Clause 8, whether Private Law 1008 denies substantive due process to those persons whose rights in the invention vested before the enactment of the law, and whether Private Law 1008 denies procedural due process by preventing a priority contest in the Patent Office.

---

3.            "AN ACT
"(to correct possible inequity in the case of a certain application for letters patent of William R. Blair)
    "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That notwithstanding any provision of existing law, the application for United States letters patent of William R. Blair, serial number 598,167, filed June 7, 1945, for Object Locating System, shall not be rejected nor shall any patent granted on said application be held invalid by reason of the fact that the invention disclosed in said application was patented or described in a printed publication in this or any foreign country, or was in public use or on sale in this country, unless the effective date of such patent, publication, public use, or sale, is prior to the date of said invention by the said William R. Blair: Provided, However, That the holder of any patent granted under this Act shall not, except to the extent of requiring the payment of a reasonable fee or royalty, be entitled to enforce his patent rights thereunder against any person who, before the passage of this Act, was lawfully manufacturing or using the invention covered by such patent, or was bona fide in possession of any rights in a patent or application for patent conflicting with such patent so issued.
    "Approved September 27, 1950."

## A. *Exclusive Right.*

Defendant bottoms its first argument on the patent clause of the Constitution (Article 1, § 8, cl. 8), which gives Congress the power "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the *exclusive* Right to their respective Writings and Discoveries." (italics supplied).

We have found no cases which hold that Congress lacks the authority to grant a patent, or by general law to provide for the granting of a patent, under circumstances where the rights of persons, other than the patentee or his successor in interest, arising prior to the grant of the patent are afforded at least some protection. A consideration of the case law, as well as various statutes dealing with patents, leads us to the conclusion that Congress undoubtedly possesses this power.

We perceive no real distinction between protection of intervening rights in the case of issuance of a patent in the first instance and the case of reissuance of a patent. In regard to the latter, prior to 1832 "there was no mention in the statutes of any way in which any patent, once granted, could be extended and its duration thus prolonged," 2 Walker, Patents (1937 Ed.), § 230, p. 1172. This state of the law was changed by the passage of the Act of July, 1832, 4 Stat. at L., ch. 162, § 2, p. 559, but it, in turn, was repealed by the Patent Act of July 4, 1836, 5 Stat. at L., ch. 357, § 21, p. 125.

Prior to 1832 the case of Evans v. Jordan, 9 Cranch 199, 13 U.S. 199, 3 L.Ed. 704 (1815), was decided. That case was a suit for damages for infringement. It appeared that after a patent issued to Evans had expired and, moreover, had been judicially declared void, defendants erected machinery covered by the expired and voided patent. In 1808, Congress passed an Act authorizing the Secretary of State to issue to Evans a patent for fourteen years, "provided,

that no person who may have heretofore paid the said Oliver Evans for license to use the said improvements, shall be obliged to renew said license, or be subject to damages for not renewing the same; and, provided also, that no person who shall have used the said improvements, or have erected the same for use, before the issuing of the said patent, shall be liable to damages therefor."

The case decided that defendants would be liable for damages prospectively from the date of reissuance of the patent. In commenting upon counsel's argument that such a result was harsh, the Court said (9 Cranch 202–203, 13 U.S. 202–203):

"* * * The provisos in this law profess to protect against the operation of the general law, three classes of persons; those who had paid Evans for a license prior to the passage of the law; those who may have used his improvements; and those who may have erected them for use, before the issuing of the patent.

"The legislature might have proceeded still further, by providing a shield for persons standing in the situation of these Defendants. It is believed that the reasonableness of such a provision could have been questioned by no one. * * * *"[4]

With the passage of the Patent Act of July 4, 1836, supra, and subsequent amendments thereto, authority to extend patents was lodged in the Patent Office and various officials and agencies thereof. One basic requirement was that application for extension must be made before the expiration of the patent sought to be extended. When John Goulding, to whom a patent was issued on December 15, 1826, reissued on July 29, 1836, and then expired December 5, 1849, by reason of his reliance upon erroneous information given him by the Commissioner of Patents, failed to make a timely application for reissuance, Congress, on May 30, 1862, enacted a private law authorizing

---

4. The validity of the patent was the subject of further litigation in Evans v. Eaton, 3 Wheat. 454, 16 U.S. 454, 4 L.Ed. 433 (1818).

the Commissioner of Patents to grant the extension of the patent or to withhold it, the same as if the application had been seasonably made, "provided that the renewal and extension shall not have the effect, or be construed, to restrain persons who may be using the machinery invented by said Goulding at the time of the renewal and extension, hereby authorized, from continuing the use of the same, nor subject them to any claim or damage for having so used the same." By the time the Commissioner of Patents reissued the patent, nearly twenty years had elapsed from the expiration of the term for which it was originally issued.

The Goulding private law was involved in Agawam Co. v. Jordan, 7 Wall. 583, 74 U.S. 583, 19 L.Ed. 177 (1868), where Goulding's assignee sued for infringement. It was held that in the light of the proviso, Goulding's assignee could not recover damages for any period antecedent to the date of the reissued patent.

The Fire-Extinguisher Case, 21 F. 40 (C.C.Md.1884), *inter alia,* concerned the validity of the Act of June 14, 1878, which relieved the heirs of William A. Graham from all disabilities preventing them from renewing or reviving an application filed by Graham in 1837 for a patent for a fire extinguisher. The original application was refused by the Commissioner of Patents annd abandoned by the inventor, who then died in 1857. After a fire extinguisher patent was granted to someone else in 1869, based upon an alleged invention in 1861, and successfully voided by proof of invention by Graham and demonstration in 1852 or 1853, Graham's administrator sought to obtain a patent. When he was refused, the Act of Congress ensued.

The Act authorized the administrator to renew the 1837 application and authorized the Commissioner of Patents to issue a patent "provided, that all persons having machines, containing the inventions, in use should have the right to continue to use them without being liable for any infringement." (p. 42)

Judge Morris sustained the validity of the Act, saying (pp. 42–43):

" * * * With regard to the terms upon which the exclusive right shall be granted, the time when the application for the original grant or for any renewal or extension of it shall be made, it has been frequently held that the regulations in these matters are merely self-imposed restrictions on the constitutional power of congress, which it can at its pleasure disregard in any particular case. Walker, Pat. § 255.

"Special acts for the relief of particular inventors have often been passed by congress. Evans v. Eaton, 3 Wheat. 454, [4 L.Ed. 433.] In the case of Agawan Co. v. Jordan, 7 Wall. 583, [19 L.Ed. 177,] the supreme court sustained a patent which had been extended in pursuance of a special act of congress, passed more than 20 years after the original patent had expired, and the invention had been free to the public. The act of congress in that case was quite similar to the one under consideration, in that it authorized the commissioner to entertain the application for extension as though it had been made within the time prescribed by the general law. In Blanchard v. Sprague, 2 Story, 170, Mr. Justice Story, speaking of the right of congress to grant a patent to an inventor whose invention had, at the time of the passage of the act, gone into public use, says that the question is set at rest by Evans v. Eaton, and that he had never doubted the constitutional authority of congress to make such a grant.

"The right which the public has acquired to use the thing invented, by reason of the applicant for a patent failing to do something prescribed by congress, and the necessity for which congress might, by previous legislation, have dispensed with, has never been held to be a vested right. The cases of Evans v. Eaton, supra; Evans v. Jordan, 9 Cranch, 199, [3 L.Ed. 704]; Bloomer

v. Stolley, 5 McLean, 161; Jordan v. Dobson, 2 Abb. (U.S.) 408, hardly leave this question debatable."

Not without significance also is United States v. National Lead Co., 332 U.S. 319, 67 S.Ct. 1634, 91 L.Ed. 2077 (1947). That case was a civil action to enjoin violations of §§ 1 and 2 of the Sherman Anti-Trust Act. Violation of the Act was found, *inter alia*, through the pooling of patents, and the main question on appeal concerned the form of the final decree.

The District Court ordered that with respect to certain patents, the defendants were obliged to grant licenses to any applicant therefor at reasonable royalties. This portion of the decree was affirmed by the Supreme Court. Thus, the Court approved a modification of the original exclusive nature of the patent albeit under circumstances differing from those in the case at bar.

The long standing judicial recognition of flexibility in the "exclusive" concept of patents is embodied in the present patent statutes. There is presently no general act for extension of patents.[5] Indeed, 2 Walker, supra, § 228, p. 1168, states, "Patents can now be extended only by special acts of congress." There is, however, statutory authority for the reissue of defective patents, 35 U.S.C.A. (1954), § 251, and special provision is made by general law of rights which may come into being antecedent to the issuance of a valid patent, 35 U.S.C.A. (1954), § 252. That statute provides, in part:

"No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, and it may also provide for the continued practice of any process patented by the reissue, practiced, or for the practice of which substantial preparation was made, prior to the grant of the reissue, to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue."

■ The direct and indirect expressions of approval of various private laws which have modified the exclusiveness of the grant to the patentee and the long legislative history of the exercise of congressional power to modify the exclusiveness of a patent grant, dating, indeed, from shortly after the adoption of the Constitution, lead us to conclude that Congress did not violate Article 1, § 8, cl. 8 of the Constitution in the enactment of Private Law 1008.

B. *Substantive Due Process.*

Defendant's substantive due process argument consists of two parts. First, defendant, as a member of the public, claims that it and other members of the public acquired a vested right in the

5. The last extension statute was the Act of June 30, 1950, ch. 444, 64 Stat. 316, which gave extension rights to persons who served in World War II. The Act was limited to persons who within one year after its enactment made application to the Commissioner of Patents and complied with its provisions. The Act has now been eliminated from the U. S. Code.

The Act provided, however, in similar terms to those adopted in the Private Act for Blair, that [extension] rights thereunder as respects persons bona fide possessing or manufacturing the patented article prior to the extension would only be subject to payment of reasonable royalties to the patentee upon granting of his extension.

invention because of Blair's failure to seek a patent within the time prescribed by law and the passage of the invention into the public domain. It argues that to require it and them to pay a royalty from the date of issue of the Blair patent will deny this property right. Defendant argues, second, that Private Law 1008 is a special, discriminatory law which violates the concept of fair play under the Fifth Amendment in the opprobrious sense of a denial of equal protection of the laws under the Fourteenth Amendment.

■ From the authorities cited in response to defendant's "exclusive" argument, the cases dealing with reissue and extension of patents, and particularly the language of Judge Morris in The Fire-Extinguisher Case, supra, defendant is in error when it argues that it and the public acquired a property right in the Blair invention by reason of Blair's failure to pursue a timely application for a patent, and that this right is one entitled to the protection of the due process clause.

■ Insofar as defendant's argument on this point is concerned, Private Law 1008 did nothing more than waive the statute of limitations contained in 35 U.S.C.A. (1954), § 102(b).[6] In Federal jurisprudence statutes of limitations are not generally considered to create vested rights in those whose obligations are barred from enforcement. In Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L. Ed. 483 (1885), in holding valid a state constitutional provision which removed the bar of a statute of limitations, the Court stated (p. 628, 6 S.Ct. p. 213):

"The statutes of limitation, as often asserted and especially by this court, are founded in public needs and public policy—are arbitrary enactments by the law-making power. * * * The authorities we have cited, especially in this court, show that no right is destroyed when the law restores a remedy which had been lost."

A later expression is contained in Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945), where, again, the validity of a state enactment removing a previous bar of limitations was in issue. In sustaining the validity of the law, the Court said (p. 314, 65 S.Ct. p. 1142):

"Their shelter [speaking of limitations statutes] has never been regarded as what is now called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitations shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control."

William Danzer & Co. v. Gulf & S. I. R. R., 268 U.S. 633, 45 S.Ct. 612, 69 L. Ed. 1126 (1925), cited by defendant, is not to us persuasive. In that case the act held invalid purported to extend the time limitation in an earlier law creating a remedy. Right and remedy were inextricably mixed, so that removal of the bar of limitations constituted the creation of an additional remedy. As our previous footnote 4 shows, limitations are a comparatively recent innovation in the patent statutes. They were not introduced until eighty years from the first general patent law and they bespeak more in the nature of true statutes of limitations than the act questioned in Danzer.

We think defendant and the public acquired no property right of which they have been denied.

■■ Unlike the Fourteenth Amendment which is applicable to the states, the Fifth Amendment which is applicable to the federal government, contains no specific equal protection clause. But "due process" as guaranteed by the Fifth Amendment includes, at least in

6. It should be noted that not until the Patent Act of 1870, 16 Stat. 201, was any time limit imposed on an applicant for a patent to make his application.

part, "equal protection" as guaranteed by the Fourteenth Amendment, Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Due process prohibits Congress from enactments which shock the sense of fair play, Galvan v. Press, 347 U.S. 522, 530, 74 S.Ct. 737, 98 L.Ed. 911 (1954). Thus, the essential question is whether the purported justification for Private Law 1008 is so arbitrary and unreasonable that it offends due process, Flemming v. Nestor, 363 U. S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). As recently as McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), in dealing with the stricter prohibition against discriminatory legislation contained in the equal protection of the laws clause, the Court stated (p. 426, 81 S.Ct. p. 1105), "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

We cannot say, in spite of defendant's extensive arguments to the contrary, that Congress had no basis on which to conclude that Colonel Blair was entitled to special relief. Especially is this so when Congress, in the exercise of its authority under the patent clause, was not laboring under a requirement of uniformity such as is found in other clauses of Article 1, § 8 of the Constitution, and when in granting relief Congress was more protective of intervening rights than in many of the special acts recited in an earlier section of this opinion. Defendant's arguments are not properly addressed to this Court. They should have been addressed to Congress and not to us.

C. *Procedural Due Process.*

The remaining contention to be considered is defendant's claim of denial of procedural due process. The argument stems from the favorable report of the Senate Judiciary Committee (S.Rep. 1665, 81st Cong. 2d Sess. (1950)), which stated:

"This bill will not assure the granting of a patent to Colonel Blair. *This bill is for the purpose of enabling Colonel Blair to contest priority in the United States Patent Office as to his invention with other parties claiming the same invention.* Thus, if Colonel Blair is unsuccessful in proving that he is the prior inventor, no patent will issue to him. *This bill would give no special advantage as to priority or patentability to Colonel Blair,* nor does this bill ask that any determination involving patentability or priority be waived by the Patent Office." (italics supplied).

Defendant advises us that by reason of Colonel Blair's naked claim of invention at such an early date the regular procedures of the Patent Office with regard to an interference proceeding were considered by the latter to be inapplicable, so that other radar claimants, for example those claiming under Gloess, Serial No. 231,186 filed September 22, 1938, who relied upon an application for a French patent, two British patents and a United States patent, were denied an effective forum to litigate priority of invention in the Patent Office.

As discussed in 2 Walker, supra, § 189, p. 889, et seq., the essential function of an interference proceeding is to determine priority of invention between two or more parties.

The legislative intent expressed in Private Law 1008 and the proceedings leading to its enactment was not to circumvent the usual administrative consideration of the Blair patent application, so that any departure on the part of the Patent Office from its usual procedures and any failure on the part of the Patent Office fully to consider interference would seem to arise from a misconception of the purpose and meaning of the Act. But we cannot say that such failure amounts to denial of procedural due process. The assignee of the Blair patent has instituted suit for infringement in this Court. Finding as we do, that Congress, in enacting Private Law 1008, validly exercised its power to grant patents and that there are no substan-

tive due process objections to the Act, it necessarily follows that the entire validity of the Blair patent, including the question of prior invention, may be raised, litigated and decided in this Court. Procedural due process is thus fully served.

In the light of our conclusion, it is unnecessary for us to consider plaintiff's claim that the constitutionality of Private Law 1008 may be sustained under the war powers of Congress, Constitution, Article 1, § 8, cl. 11. Nor do we express any opinion as to the merits or validity of the patent.

Defendant's motion for a declaration of invalidity of Private Law 1008 and for a permanent injunction restraining the enforcement of said law is denied. The three-judge court is dissolved, and the case to remain on the docket for trial in regular course.

SOBELOFF, Circuit Judge, and R. DORSEY WATKINS, District Judge, concur.